IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THERAPEUTICSMD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:25-cv-00440-RGA |
| | ) | |
| MAYNE PHARMA LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT MAYNE PHARMA LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:

**ARNOLD & PORTER KAYE
SCHOLER LLP**
Aaron F. Miner (*pro hac vice* forthcoming)
Matthew F. Medina (*pro hac vice*
forthcoming)
250 West 55th Street
New York, NY 10019
Phone: 212.836.8000
Fax: 212.836.8689
aaron.miner@arnoldporter.com
matthew.medina@arnoldporter.com

May 30, 2025

**MORRIS, NICHOLS, ARSHT &
TUNNELL LLP**
S. Mark Hurd (Bar No. #3297)
Elise K. Wolpert (#6343)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Phone: (302) 658-9200
shurd@morrisnichols.com
ewolpert@morrisnichols.com

*Counsel for Defendant
Mayne Pharma LLC*

TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ..............................................................................1

SUMMARY OF ARGUMENT ..................................................................................................2

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT ............................................................................................................................6

     I.     LEGAL STANDARD..............................................................................................6

     II.    THE AGREEMENT DOES NOT REQUIRE CLOSING STATEMENTS TO BE PROVIDED EVERY QUARTER, NOR CAN TXMD ALLEGE DAMAGES FOR FAILURE TO DO SO ........................7

     III.   THE UNAMBIGUOUS LANGUAGE OF AMENDMENT NO. 2 CONTRADICTS TXMD'S BREACH OF CONTRACT CLAIM RELATING TO THE NDC CODE TRANSFER....................................................9

     IV.   TXMD'S BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING CLAIM FAILS BECAUSE TXMD DOES NOT PLEAD A SPECIFIC IMPLIED CONTRACTUAL OBLIGATION ....................................................................................................................10

     V.    TXMD'S FRAUDULENT INDUCEMENT CLAIM FAILS BECAUSE IT HAS NOT PLED WITH PARTICULARITY AN ACTIONABLE STATEMENT THAT WAS FALSE WHEN MADE....................................................................................................................14

     VI.   TXMD'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE THE ALLEGED WRONGFUL CONDUCT ARISES FROM A RELATIONSHIP GOVERNED BY CONTRACT................................................16

CONCLUSION.......................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

<u>Cases</u>

*Allied Capital Corp. v. GC—Sun Holdings, L.P.*,
　910 A.2d 1020 (Del. Ch. 2006)..........................................................................10

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..............................................................................................6

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)..............................................................................................6

*Buck v. Hampton Twp. Sch. Dist.*,
　452 F.3d 256 (3d Cir. 2006)..................................................................................3

*Cantor Fitzgerald, L.P. v. Cantor, et al.*,
　1998 WL 842316 (Del. Ch. Nov. 10, 1998) ...........................................10, 11, 12

*Dunlap v. State Farm Fire & Cas. Co.*,
　878 A.2d 434 (Del. 2005) ........................................................................10, 12

*Garner v. Glob. Plasma Sols. Inc.*,
　590 F. Supp. 3d 738 (D. Del. 2022).....................................................................15

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*,
　2014 WL 6703980 (Del. Ch. Nov. 26, 2014) ......................................................16

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*,
　2018 WL 6311829 (Del. Ch. Dec. 3, 2018)..........................................................14

*Great Lakes Chem. Corp. v. Pharmacia Corp.*,
　788 A.2d 544 (Del. Ch. 2001)..............................................................................15

*iBio, Inc. v. Fraunhofer USA, Inc.*,
　2020 WL 5745541 (Del. Ch. Sept. 25, 2020) ................................................16, 17

*Johnson v. Gov't Emps. Ins. Co.*,
　2014 WL 2708300 (D. Del. June 16, 2014), *aff'd sub nom. Johnson v. GEICO
　Cas. Co.,* 672 F. App'x 150 (3d Cir. 2016) ..........................................................8

*Kuroda v. SPJS Holdings, L.L.C.*,
　971 A.2d 872 (Del. Ch. 2009)..............................................................................16

*Liborio III, L.P. v. Artesian Water Co., Inc.*,
　306 A.3d 529 (Del. 2023) .....................................................................................14

*Lincoln Nat. Life Ins. Co. v. Snyder*,
    722 F. Supp. 2d 546 (D. Del. 2010) ............................................................................ 3

*Lord v. Souder*,
    748 A.2d 393 (Del. 2000) ............................................................................................ 14

*Lungu v. Antares Pharma Inc.*,
    2022 WL 212309 (3d Cir. Jan. 25, 2022) .................................................................. 6

*Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*,
    261 A.3d 1199 (Del. 2021) ......................................................................................... 7

*Mrs. Fields Brand, Inc. v. Interbake Foods LLC*,
    2017 WL 2729860 (Del. Ch. June 26, 2017) ............................................................. 13

*Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*,
    112 A.3d 878 (Del. 2015) ............................................................................................ 10

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ............................................................................... 13, 14, 16

*Nutt v. A.C. & S., Inc.*,
    466 A.2d 18 (Del. Super. Ct. 1983), *aff'd sub nom. Mergenthaler v. Asbestos
    Corp. of Am.*, 480 A.2d 647 (Del. 1984) ..................................................................... 15

*Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,
    202 A.3d 482 (Del. 2019) ................................................................................ 10, 11, 13

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
    117 F. Supp. 3d 613 (D. Del. 2015) ........................................................... 6, 7, 8, 10

*REI Holdings, LLC v. LienClear - 0001, LLC*,
    2019 WL 3546881 (D. Del. Aug. 5, 2019) ................................................................. 17

*Reklam v. Bellator Sport Worldwide LLC*,
    2017 WL 5172397 (D. Del. Nov. 8, 2017) ................................................................. 13

*Satellite Fin. Plan. Corp. v. First Nat. Bank of Wilmington*,
    633 F. Supp. 386 (D. Del.) ........................................................................................... 15

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) ............................................................................................ 16

*Scott v. Vantage Corp.*,
    2018 WL 5919743 (D. Del. Nov. 13, 2018) ............................................................... 12

*Sheth v. Harland Fin. Sols., Inc.*,
    2014 WL 4783017 (Del. Super. Ct. Aug. 28, 2014) ................................................... 13

*Tolliver v. Christina Sch. Dist.*,
    564 F. Supp. 2d 312 (D. Del. 2008)..................................................................16

*Tuno v. NWC Warranty Corp.*,
    552 Fed. Appx. 140 (3d Cir. 2014).....................................................................8

*Winshall v. Viacom Int'l, Inc.*,
    55 A.3d 629 (Del. Ch. 2011).............................................................................11

**Other Authorities**

Fed. R. Civ. P. 9.....................................................................................................2, 15

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 6

Fed. R. Civ. P 9(b)....................................................................................................15

NATURE AND STAGE OF PROCEEDINGS

In December 2022, Defendant Mayne Pharma LLC ("Mayne") and Plaintiff TherapeuticsMD, Inc. ("TXMD") entered into a Transaction Agreement (the "Transaction Agreement") and License Agreement (the "License Agreement") whereby Mayne received a license from TXMD to manufacture, market, and distribute certain TXMD women's health products ("TXMD Products"). As part of the transaction, Mayne purchased TXMD's existing inventory of its products ("TXMD Inventory").

Mayne paid TXMD a purchase price in addition to Estimated Net Working Capital. The Net Working Capital was "estimated" because, among other things, the ultimate disposition of the TXMD Inventory would affect the calculation of Net Working Capital. The parties anticipated that Net Working Capital would be trued-up over the next two years as the TXMD Inventory was distributed, dispensed to patients, or returned. For example, the disposition of the TXMD Inventory would affect wholesale distribution fees, payer rebates, and returns, all of which would cause a decline in Net Working Capital.

On April 8, 2025, TXMD brought suit on claims related to this true-up process, as well as one tag-along claim relating to the transfer of the National Drug Code labeler code ("NDC Code"). The Complaint asserts five causes of action: two claims of breach of contract, and related claims for breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and unjust enrichment. These claims have no basis in the parties' agreements and fail to satisfy Delaware pleading standards. Mayne now brings this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1]

---

[1] Mayne moves in parallel to compel submission of disputed matters to BDO, or alternatively, to compel arbitration, on all counts except for Count II based on the express terms of the Transaction Agreement. In moving in the alternative, to dismiss all Counts of the Complaint, Mayne does not waive its right to arbitration or to compel determination of accounting issues by BDO but instead expressly reserves such rights.

- 1 -

## SUMMARY OF ARGUMENT

1.   TXMD's claim for breach of contract of § 5.3(h) of the Transaction Agreement fails to allege a breach and damages.

2.   TXMD's claim for breach of contract of the NDC Code fails to allege a breach.

3.   TXMD's claim for breach of the implied covenant of good faith and fair dealing fails to allege a specific implied contractual obligation.

4.   TXMD's claim for fraudulent inducement fails to allege any actionable misrepresentation, much less an actionable misrepresentation with the particularity required by Fed. R. Civ. P. 9.

5.   TXMD's claim for unjust enrichment fails because it alleges wrongful conduct governed by a contract that is valid and enforceable.

## STATEMENT OF FACTS

Mayne is a specialty pharmaceutical company focused on commercializing novel and generic pharmaceuticals. TXMD is a "royalty company" that licenses women's health products. Compl. ¶ 7. On or about December 4, 2022, the parties executed the Transaction Agreement and License Agreement. *Id.* ¶ 10; **Ex. A** ("Transaction Agreement"). Through the parties' agreements, Mayne received a license from TXMD to manufacture, market, and distribute the TXMD Products. *Id.* ¶ 10. In addition to acquiring a license to sell Mayne-branded TXMD Products, Mayne also purchased the ongoing TXMD commercial pharmaceutical operations. *Id.* ¶ 14. These were mainly in the form of unsold TXMD Products in inventory awaiting sale and distribution, partially finished TXMD Products inventory, and other items. *Id.* The transaction was scheduled to close on or before December 30, 2022 (the "Closing"). *Id.* ¶ 10. Subsequently, the Transaction Agreement

was amended several times. *Id.* ¶ 11; **Ex. B** ("Amendment No. 1), **Ex. C** ("Amendment No. 2").[2] In particular, on March 15, 2023, the parties entered into Amendment No. 2, in which the NDC Code was transferred to Mayne. Ex. C. Although the Complaint references the License Agreement, each of Plaintiff's claims relate to the Transaction Agreement.

At Closing, Mayne was obligated to pay TXMD "an amount equal to the Purchase Price plus the Estimated Net Working Capital." Compl. ¶ 19; Ex. A, § 5.1. TXMD and Mayne agreed that the Net Working Capital acquired by Mayne would be trued-up after the close of the transaction because, among other things, the remaining TXMD Inventory previously sold into the commercial channel was distributed, dispensed to patients, or returned. Compl. ¶ 14. In particular, the parties agreed to resolve three components of Net Working Capital to calculate a "Final Net Working Capital" in the two years following Closing: wholesale distributor fees, payer rebates, and returns. *Id.* ¶ 24; Ex. A, § 5.3(h). All three were treated as liabilities against the assets transferred to Mayne and would be paid by TXMD post-Closing:

- Wholesale distributor fees are fees paid by Mayne to wholesale distributors for TXMD Products sold to distributors before the Closing, but for which distribution fees had not yet been paid. Compl. ¶¶ 25-26.

- Payer rebates are rebates paid by Mayne to payers based on rebate contracts negotiated and in place before the Closing. *Id.* ¶ 28.

- The allowance for returns consists of refunds and processing fees for returns of TXMD Products sold by TMXD before the Closing. *Id.* ¶ 33.

The parties would true-up Estimated Net Working Capital to arrive at Final Net Working

---

[2]    The Court can take judicial notice of the Transaction Agreement and its Amendments. In evaluating a 12(b)(6) motion to dismiss, a court "may may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim…" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations and citation omitted); *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 560 (D. Del. 2010) ("the court may properly consider the Amendment as part of the contract for purposes of the motion to dismiss").

Capital in three stages: (1) within 90 days after the closing for all Estimated Net Working Capital categories except for rebates, distribution fees, and returns, to arrive at a "Closing Net Working Capital"; (2) within one year after the Closing for rebates and wholesale distributor fees; and (3) within two years for returns. *Id.* ¶ 16. To facilitate the resolution of Final Net Working Capital, Mayne could provide updated Closing Statements that calculated Closing Net Working Capital for allowance for returns, wholesale distributor fees, and payer rebates, which would contain comparisons against accruals as calculated quarterly. Ex. A, § 5.3(h) ("Purchaser may continue to provide updated Closing Statements solely with respect to calculation of the Closing Net Working Capital conduct solely with respect to the matters included in the items entitled Allowance for Returns, Allowance for Wholesale Distributor Fees and Payer Rebates, in each case, comparing actual invoices against accruals on a quarterly basis."). TXMD agrees that Mayne provided statements for the rebates and distribution fees on January 16, 2024, and for returns on February 3, 2025. Compl. ¶ 18.

TXMD alleges that Mayne allegedly transferred TXMD's NDC Code back to TXMD on January 27, 2023, in violation of an agreement that Mayne would possess the NDC Code as of the Closing Date. *Id.* ¶ 59. But TXMD's initial transfer of the NDC Code in December 2022 was improper and incorrect because (1) the Transaction Agreement did not include the NDC Code as part of the transferred assets, and (2) it was not properly addressed in terms of government pricing and payments. As a result, Mayne transferred the NDC Code back to TXMD in January 2023. Compl. ¶ 62. The parties then discussed, in March 2023, a correct transfer of the NDC Code post-Closing, which resulted in Amendment No. 2 and a Side Letter agreement "detailing the government pricing process to ensure transition of the government pricing functions for the Products." Ex. C. TXMD ignores the express language of Amendment No. 2, wherein TXMD and

Mayne agreed to transfer the NDC Code in March 2023, well after Mayne's alleged breach on January 27, 2023. Ex. C.

Sometime in 2023, TXMD claims, upon "information and belief," that Mayne began overselling TXMD Products beyond prescribing market demand. Compl. ¶ 36. TXMD claims that as a result, the older and sooner-to-expire TXMD Inventory was preferentially returned at a volume that significantly exceeded expectations. *Id.* ¶ 37. TXMD further contends that these larger-than-expected returns generated changes to the constituent components of Net Working Capital, namely allowances for rebates and coupons. *Id.* ¶ 42. TXMD cites no provision of the Transaction Agreement that limits or restricts the quantity of TXMD Products that Mayne can sell. But this is not a gap in the Agreement requiring the Court to construe an implied term; rather the Transaction Agreement already regulates greater than expected allowances for returns and the inherent uncertainty of interim estimates through the true up mechanism and the dispute resolution process. Regretting the deal it struck, TXMD now asks this Court not to fill a gap but to draft entirely new obligations and provisions that are not apparent from the text of the Transaction Agreement.

In December 2023, TXMD and Mayne entered into a settlement for the Closing Net Working Capital ("December 2023 Settlement Agreement"). *Id.* ¶ 17. As part of the settlement, TXMD and Mayne agreed that TXMD would pay Mayne $5,500,000. *Id.* ¶ 80; **Ex. D** (December 2023 Settlement Agreement). The parties also entered into mutual releases arising out of the "Applicable Sections," which were defined as Sections 5.3(a) through (g), which described, among other things, Closing Net Working Capital. Ex. D at 1. Despite the December 2023 Settlement Agreement, TXMD has brought this action. TXMD claims that Mayne fraudulently induced TXMD into the December 2023 Settlement Agreement because "Mayne represented to TXMD that the Allowance for Coupons and Allowance for Payer Rebates line items were going to be

higher than either Party expected." Compl. ¶ 81. This is a mere business prediction or estimate, which cannot serve as a basis for fraud.

On January 16, 2024, Mayne sent TXMD the Closing Statement for Allowance for Rebates and Wholesale Distribution Fees. TXMD alleges that Mayne's 2024 Closing Statement for allowance for returns and wholesale distributor fees failed to provide "summary information in the format of the Pre-Closing Statement"; and that Mayne did not send statements on a quarterly basis. *Id.* ¶¶ 58-64, 43-44. What TXMD does not allege, however, is that Mayne's Closing Statement failed to contain "comparisons against accruals as calculated quarterly," as provided in the Transaction Agreement. Ex. A, § 5.3(h).

On February 3, 2025, Mayne sent TXMD its "Closing Statement" for Allowance for Returns. TXMD does not allege any deficiencies in Mayne's February 2025 Closing Statement for allowance for returns. Compl. ¶¶ 45-46.

ARGUMENT

I.    <u>LEGAL STANDARD</u>

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume that well-pled factual allegations in the complaint are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Court need not accept legal conclusions, naked assertions, conclusory statements or implausible inferences. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Twombly*, 550 U.S. at 555). To be actionable, a claim must raise more than the "mere possibility of misconduct"; the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79. "When an allegation in the complaint is contradicted by a document incorporated in it by reference, the document controls and the allegation is not accepted as true." *Lungu v. Antares Pharma Inc.*, 2022 WL 212309, at *5 n.14 (3d Cir. Jan. 25, 2022); *Phunware, Inc. v. Excelmind*

- 6 -

*Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (a court "may grant a motion to dismiss when unambiguous language of a contract contradicts plaintiffs' allegations").

II.     THE AGREEMENT DOES NOT REQUIRE CLOSING STATEMENTS TO BE PROVIDED EVERY QUARTER, NOR CAN TXMD ALLEGE DAMAGES FOR FAILURE TO DO SO

TXMD alleges that Mayne breached § 5.3(h) of the Transaction Agreement by "failing to provide quarterly" Closing Statements of Payer Rebates and Allowance for Wholesale Distributor Fees, and Closing Statements of Allowance for Returns, "in the format required, comparing actual invoices against accruals in the year following the Closing Date." Compl. ¶¶ 53-54. TXMD's sole basis for Mayne's supposed breach of contract is that Mayne provided only a single Closing Statement of payer rebates and allowance of wholesale distributor fees in January 2024, and a single Closing Statement for allowance for returns in February 2025. *Id.* ¶¶ 43-44; 51-52. In other words, TXMD alleges that Mayne was required to but did not provide statements every quarter.

TXMD is wrong in contending that the Transaction Agreement requires quarterly statements. Section 5.3(h) states:

> For a period of two years following the Closing Date in the case of Allowance for Returns and one year following the Closing date in the case of Wholesale Distributor Fees and Payer Rebates, Purchaser shall continue to provide updated Closing Statements solely with respect to calculation of the Closing Net Working Capital conduct solely with respect to the matters included in the items entitled Allowance for Returns, Allowance for Wholesale Distributor Fees and Payer Rebates, in each case, comparing actual invoices against accruals on a quarterly basis (using Purchaser's fiscal quarters).

Ex. B. In its plain language, § 5.3(h) only requires Mayne to provide in the Closing Statements a comparison of the invoices against the accruals organized by Mayne's fiscal quarters. It does ***not*** require Mayne to provide Closing Statements every quarter, as TXMD alleges. *See Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (courts "give effect to the plain meaning of the contract's terms and provisions" if a contract is clear and

unambiguous); *Phunware, Inc.*, 117 F. Supp. 3d at 625 (a court "may grant a motion to dismiss when unambiguous language of a contract contradicts plaintiffs' allegations").[3]

TXMD further fails to adequately allege that any such breach was the proximate cause of damages as required under Delaware law. *Johnson v. Gov't Emps. Ins. Co.*, 2014 WL 2708300, at *1 (D. Del. June 16, 2014), *aff'd sub nom. Johnson v. GEICO Cas. Co.,* 672 F. App'x 150 (3d Cir. 2016). TXMD claims that due to Mayne's failure to provide these supposedly required quarterly reports, TXMD "was forced to rely on incomplete information when settling the Closing Net Working Capital" in December 2023 and therefore overpaid Mayne. Compl. ¶ 55. TXMD also claims that TXMD "accepted reductions or offsets to its quarterly license fees paid by Mayne" due to the absence of quarterly Closing Statement for allowance for returns. *Id.* But nowhere does TXMD allege the excess amount was supposedly captured by Mayne; instead, TXMD vaguely alleges that some unspecified amount was supposedly "in favor of Mayne." *Id.* Indeed, given that TXMD now has copies of Closing Statement for Allowance for Returns and Closing Statements of Payer Rebates and Allowance of Wholesale Distributor Fees from that time, TXMD could have easily compared the numbers provided by Mayne against the numbers in the December 2023 calculation. TXMD's failure to do so is telling, and its allegations fail to state a claim. *See Tuno v. NWC Warranty Corp.,* 552 Fed. Appx. 140, 143 (3d Cir. 2014) (affirming dismissal of breach of contract claim where it was "not tied to any damages"); *Phunware, Inc.*, 117 F. Supp. 3d at 627 ("A breach of contract complaint may be dismissed where the plaintiffs' claims are not tied to any

---

[3]   TXMD also quibbles with the format of the January 2024 Closing Statements of Payer Rebates and Allowance of Wholesale Distributor Fees. Compl. ¶ 43. TXMD argues that the January 2024 Statement did not include summary information and "did not follow the process agreed upon in the Transaction Agreement." *Id.* ¶ 43. TXMD fails to cite the provision or language that Mayne supposedly violated (because the parties memorialized no such agreement about formatting), and the Court should not credit this bare allegation.

damages.") (citation and internal quotation marks omitted).

In an effort to save its inability to allege damages, TXMD claims that due to the absence of these quarterly reports, TXMD "was unable to identify, to prevent, or to mitigate any harms associated with the implementation of the Transaction Agreement or the Licensing Agreement." Compl. ¶ 56. TXMD alleges, as an example, that it was unable to "identify returns disallowed by TXMD's return policies or by agreement and to prevent future acceptance of such returns by Mayne." *Id*. But nowhere does TXMD allege that TXMD had the contractual right or ability to disallow returns according to TXMD's return policies or to prevent future acceptance of such returns by Mayne. There is no language in the Transaction Agreement that provides for TXMD's ability to prevent any returns to Mayne. As the Court held in *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, "[i]t is axiomatic that a plaintiff . . . must demonstrate with reasonable certainty that defendant's breach caused the loss." 350 F. Supp. 2d 582, 597 (D. Del. 2004) (citation omitted). TXMD does not do that here, and the Court should not credit such speculative damages. *See also id.* ("Speculative damages are not recoverable.").

### III. THE UNAMBIGUOUS LANGUAGE OF AMENDMENT NO. 2 CONTRADICTS TXMD'S BREACH OF CONTRACT CLAIM RELATING TO THE NDC CODE TRANSFER

TXMD next brings a breach of contract claim against Mayne for allegedly transferring TXMD's National Drug Code back to TXMD on January 27, 2023. This claim is contradicted by the express terms and chronology of the Agreements themselves. The Transaction Agreement did not contemplate or reference the NDC Code in any way. *See* Ex. A. The Closing occurred on December 30, 2022. Compl. ¶ 49. The first agreement relating to the NDC Code is Amendment No. 2, executed on March 17, 2023, in which the parties agreed "to transfer the TXMD Labeler Code to Mayne…." *See* Ex. C.

Critically, at the time of the alleged breach by Mayne in January 2023, there was no pre-

existing obligation (and TXMD has pled none), in the Transaction Agreement or elsewhere, that Mayne refrain from transferring the NDC Code. As a result, TXMD has failed to plead the breach element for this claim. On its face, TXMD's claim is belied by the plain language of Amendment No. 2. The Court should dismiss this claim accordingly. *Phunware, Inc.*, 117 F. Supp. 3d at 625 (a "court may grant a motion to dismiss when unambiguous language of a contract contradicts plaintiff's allegations in a complaint").

IV.    TXMD'S BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING CLAIM FAILS BECAUSE TXMD DOES NOT PLEAD A SPECIFIC IMPLIED CONTRACTUAL OBLIGATION

Under Delaware law, to state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege: (1) a specific implied contractual obligation, (2) a breach of that obligation, and (3) resulting damages. *See, e.g.*, *Cantor Fitzgerald, L.P. v. Cantor, et al.*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). The covenant "is 'best understood as a way of implying terms in the agreement,' whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citation omitted). The Delaware Supreme Court has made clear that "the covenant is a limited and extraordinary legal remedy." *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507-08 (Del. 2019) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)). It is "not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract"—"particularly where, as here, the parties are sophisticated business persons or entities." *Id*. Accordingly, the implied covenant "does not apply when the contract addresses the conduct at issue," *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015), but only "when the contract is truly silent" concerning the matter at hand. *Allied Capital Corp. v. GC—Sun Holdings, L.P.*, 910 A.2d 1020, 1032-33 (Del. Ch. 2006). "Even where

the contract is silent, '[a]n interpreting court cannot use an implied covenant to re-write the agreement between the parties, and 'should be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it.'" *Oxbow Carbon & Minerals Holdings, Inc.*, 202 A.3d at 507 (citation omitted); *Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 636-37 (Del. Ch. 2011) (implied covenant cannot "be applied to give the plaintiffs contractual protections that 'they failed to secure for themselves at the bargaining table…[it] is not a license to rewrite contractual language just because the plaintiff failed to negotiate for protections that, in hindsight, would have made the contract a better deal.") (internal quotations omitted).

"[T]he implied covenant of good faith and fair dealing often comes into play…when it is argued that a situation has arisen that was unforeseen by the parties and where the agreement's express terms do not cover what should happen…The [second]…is when a party to a contract is given discretion to act as to a certain subject and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms." *Oxbow Carbon & Minerals Holdings, Inc.*, 202 A.3d at 504 n.93. This case deals with the first situation. TXMD's breach of good faith and fair dealing claim fails for the following reasons.

TXMD's claim fails because it has not identified a specific contractual gap in the Transaction Agreement. TXMD alleges that "the parties would have proscribed Mayne's sales activities that oversold the demand, had they thought to negotiate the Transaction Agreement with the understanding that the TXMD Inventory would be replaced by Mayne Inventory." Compl. ¶ 70. TXMD does not allege where such an obligation would be located within the Transaction Agreement, and that omission is fatal. *Cantor Fitzgerald, L.P.*, 1998 WL 842316, at *1 ("Since a court can only imply a contractual obligation when the express terms of the contract indicate that the parties would have agreed to the obligation had they negotiated the issue, the plaintiff must

advance provisions of the agreement that support this finding in order to allege sufficiently a specific implied contractual obligation."); *Scott v. Vantage Corp.*, 2018 WL 5919743, at *6 (D. Del. Nov. 13, 2018) (same). Instead, TXMD invokes the "structure" of the Agreement. Compl. ¶ 70. That is the prototypical "free floating duty" courts regularly refuse to retroactively insert into a contract through application of the covenant. *See, e.g.*, *Dunlap v. State Farm Fire & Casualty Co.*, 878 A.2d 434, 441 (Del. July 13, 2005) ("Existing contract terms control…such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty…unattached to the underlying legal document."). TXMD's inability to plead where this Court is supposed to pencil in the alleged implied obligation is telling and dispositive.

Even if this Court were to construe TXMD's allegations and the Transaction Agreement to identify a contractual gap prohibiting Mayne from "overselling" the TXMD Products, Delaware law instructs that "a court should be cautious when implying a contractual obligation and do so only where obligations which can be understood from the text of the written agreement have nevertheless been omitted from the agreement in the literal sense." *Cantor Fitzgerald, L.P.*, 1998 WL 842316, at *1. There is nothing in the text of the Transaction Agreement relating to market demand for the TXMD Products, explaining how to handle product expiration dates, or regulating Mayne's sales process to avoid some uncertain volume of in-channel TXMD Inventory from being "replaced" based on product expiration dates. As a result, TXMD asks this Court—two and a half years after contract execution—not to fill a gap but to draft entirely new obligations and provisions that are not apparent from the text of the Transaction Agreement and were not simply "omitted from the agreement in the literal sense." *Id*.

TXMD apparently regrets the deal it struck. It could have negotiated for the very obligation it now belatedly seeks to add, but it did not. Both this Court and the Delaware Supreme Court have

- 12 -

routinely held that "[n]ot all gaps should be filled, however, because filling the gap with the implied covenant grants parties 'contractual protections that they failed to secure for themselves at the bargaining table.'" *Reklam v. Bellator Sport Worldwide LLC*, 2017 WL 5172397, at \*5 (D. Del. Nov. 8, 2017), *report and recommendation adopted*, 2017 WL 5985562 (D. Del. Dec. 1, 2017) (citation omitted); *Nemec*, 991 A.2d at 1126 (courts may "not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both."): *Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, 2017 WL 2729860, at \*40 (Del. Ch. June 26, 2017) (the implied covenant "does not save a party to an agreement from regret or negligent drafting, and Delaware courts will not rewrite contractual language 'just because one party failed to extract as complete a range of protections as it, after the fact, claims to have desired during the negotiation process.' It applies instead only 'to developments that could not be anticipated, not developments that the parties simply failed to consider.'"); *Sheth v. Harland Fin. Sols., Inc.*, 2014 WL 4783017, at \*4 (Del. Super. Ct. Aug. 28, 2014) ("Delaware courts have consistently held that the implied covenant is not a license to rewrite contractual language just because the plaintiff failed to negotiate for protections that, in hindsight, would have made the contract a better deal."). Both parties to the Transaction Agreement are sophisticated corporate entities represented by skilled counsel. "[T]he implied covenant is 'not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract'— 'particularly where, as here, the parties are sophisticated business persons or entities.'"). *Oxbow Carbon & Minerals Holdings, Inc.*, 202 A.3d at 508 (quoting *Nemec*, 991 A.2d at 1128).

In sum, TXMD got exactly what it bargained for and no more. TXMD may regret the deal it struck, but under Delaware law, regret does not suffice to state a claim for breach of the implied

covenant of good faith and fair dealing. TXMD does not sufficiently plead a specific implied contractual obligation but instead asks this Court to do what the Delaware Supreme Court has expressly warned against—rewrite an agreement negotiated by sophisticated corporate entities represented by skilled counsel to add an obligation unmoored from the express terms of the contract. "Crafting, what is, in effect, a post contracting equitable amendment that shifts economic benefits from [Mayne to TXMD] would vitiate the limited reach of the concept of the implied duty of good faith and fair dealing." *Nemec*, 991 A.2d at 1128. Accordingly, TXMD's implied covenant claim should be dismissed with prejudice.

V.     TXMD'S FRAUDULENT INDUCEMENT CLAIM FAILS BECAUSE IT HAS NOT PLED WITH PARTICULARITY AN ACTIONABLE STATEMENT THAT WAS FALSE WHEN MADE

"Under Delaware law, the elements of fraudulent inducement and fraud are the same." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018). A party claiming fraud must allege with particularity: (1) a false representation, usually one of fact, made by defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction in justifiable reliance on the representation; and (5) damage to the plaintiff as a result of such reliance. *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000). "The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation." *Liborio III, L.P. v. Artesian Water Co., Inc.,* 306 A.3d 529 (Del. 2023).

TXMD fails to allege a single actionable statement of fact made by Mayne. TXMD claims that Mayne misrepresented to TXMD that the Allowance for Coupons and Allowance for Payer

Rebates line items were *projected* to be higher than either party had previously expected. Compl. ¶¶ 42, 81. This is a classic example of a business prediction, which courts have uniformly agreed are inactionable as fraud. *See, e.g.*, *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001) ("Predictions about the future cannot give rise to actionable common law fraud"); *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 744 (D. Del. 2022) (mere estimates are not actionable).

Even if TXMD's alleged misrepresentations were actionable (they are not), TXMD has failed to plead its claim with sufficient particularity under Fed. R. Civ. P. 9. "Allegations based on information and belief will not satisfy the Rule." *Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 23 (Del. Super. Ct. 1983), *aff'd sub nom. Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del. 1984); *Satellite Fin. Plan. Corp. v. First Nat. Bank of Wilmington*, 633 F. Supp. 386, 403 (D. Del.), *on reconsideration*, 643 F. Supp. 449 (D. Del. 1986) ("Rule 9(b) allows a plaintiff to aver generally the second and third of these elements, which involve a defendant's state of mind. Circumstances that constitute the remaining elements, if alleged on information and belief, generally will not satisfy Rule 9(b)'s particularity requirement."). Here, the falsity of the alleged representations— the crux of TXMD's fraudulent inducement claim—is entirely premised upon a conclusory allegation made upon information and belief.[4] That is insufficient as a matter of law. *Id.* In fact, TXMD never actually alleges that Mayne's representation was false, *i.e.,* that Allowances for Coupons and Payer Rebates were not higher than the parties' prior expectations. TXMD has failed to allege *any* actionable statement, much less an actionable statement with particularity that was

---

[4]     *See* Compl. ¶ 36 ("On information and belief, over the course of 2023 (and possibly in 2024 or 2025) Mayne sold more TXMD Products than was justified by market demand and the inventory already in the channel that could meet the market demand, including the TXMD Inventory in the channel.").

false when made, and thus its fraudulent inducement claim must be dismissed.

VI.     TXMD'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE THE ALLEGED WRONGFUL CONDUCT ARISES FROM A RELATIONSHIP GOVERNED BY CONTRACT

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999). "It was developed 'as a theory of recovery to remedy the absence of a formal contract.'" *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014), *judgment entered*, (Del. Ch. 2014). To plead an unjust enrichment claim, plaintiff to establish five elements: "(1) an enrichment, (2) an impoverishment, (3) a relationship between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec*, 991 A.2d at 1130.

"In evaluating an unjust enrichment claim, the Court must first determine whether a contract governs the parties' relationship." *iBio, Inc. v. Fraunhofer USA, Inc.*, 2020 WL 5745541, at *11 (Del. Ch. Sept. 25, 2020). "If a contract comprehensively governs the relevant relationship between the parties, then the contract must provide the measure of the plaintiff's rights, and any claim of unjust enrichment will fail." *Id.*; *see also*, *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 316 (D. Del. 2008) ("Because an express and valid contract exists that governs exclusively [the parties'] rights and duties with regard to the licenses and services, the [plaintiff's] unjust enrichment claim must fail, even though circumstances have made the contract less desirable for the [plaintiff] than anticipated."); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) ("When the complaint alleges an express, enforceable contract that controls the parties' relationship…a claim for unjust enrichment will be dismissed."). Delaware courts thus "routinely dismiss[] unjust enrichment claims that are premised on an 'express, enforceable contract that

controls the parties' relationship because damages is an available remedy at law for breach of contract." *iBio, Inc.*, 2020 WL 5745541, at *11; *REI Holdings, LLC v. LienClear - 0001, LLC*, 2019 WL 3546881, at *10 (D. Del. Aug. 5, 2019) ("Courts in Delaware 'have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract.'").

Here, TXMD's alternative unjust enrichment claim is premised on the recycled allegation that Mayne oversold demand for the TXMD Products causing increased returns of TXMD Inventory which, pursuant to the Transaction Agreement, resulted in improper disbursements for coupons, rebates, and wholesale distributor fee allowances. Compl. ¶¶ 91-95. TXMD alleges that the License Agreement, Transaction Agreement, and Settlement of Closing Net Working Capital agreement are valid, enforceable agreements which govern the relationship between the parties. *Id.* ¶¶ 10-12, 48, 60, 79. Since the wrongful conduct alleged arises from a relationship governed by these contracts, TXMD's unjust enrichment claim must be dismissed. *REI Holdings, LLC*, 2019 WL 3546881, at *10.

<u>CONCLUSION</u>

For these reasons, Mayne respectfully moves to dismiss TXMD's Complaint in full and with prejudice.

- 17 -

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

OF COUNSEL:

**ARNOLD & PORTER KAYE
SCHOLER LLP**
Aaron F. Miner (*pro hac vice*
forthcoming)
Matthew F. Medina (*pro hac vice*
forthcoming)
250 West 55th Street
New York, NY 10019
Phone: 212.836.8000
aaron.miner@arnoldporter.com
matthew.medina@arnoldporter.com

May 30, 2025

/s/ *S. Mark Hurd*
S. Mark Hurd (#3297)
Elise K. Wolpert (#6343)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Phone: (302) 658-9200
shurd@morrisnichols.com
ewolpert@morrisnichols.com

*Counsel for Defendant
Mayne Pharma LLC*