## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THERAPEUTICSMD, INC.

          Plaintiff,

    v.

MAYNE PHARMA LLC

          Defendant

C.A. No. 25-440-RGA

**PLAINTIFF THERAPEUTICSMD'S ANSWERING BRIEF IN OPPOSITION TO
(D.I. 21) DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**SMITH KATZENSTEIN & JENKINS LLP**

Julie M. O'Dell (No. 6191)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
jmo@skjlaw.com
dat@skjlaw.com

*Attorneys for Plaintiff TherapeuticsMD, Inc*

Dated: August 29, 2025

# TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................ iii

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................ 1

II.     SUMMARY OF ARGUMENT ....................................................................... 1

III.    ANSWERING COUNTERSTATEMENT OF FACTS .................................... 2

IV.     ARGUMENT ................................................................................................. 2

        A.      Count I states a claim for breach of § 5.3(h) ........................................ 2

                1.      Purported compliance with § 5.3(b) is not dispositive of breach
                        of § 5.3(h), an altogether different subsection ............................ 2

                2.      A disputed construction of a contractual term is not a basis for
                        dismissal ..................................................................................... 3

                3.      *Chemipal* does not support dismissal based upon damages ........................ 5

        B.      Conclusory citation to general principles of Delaware law is no basis to
                dismiss the implied covenant claim in Count II .................................... 6

        C.      The FAC alleges breach of contract as to the NDC Labeler Code ........................ 9

                1.      Mayne's obligation is implied in fact by the nature of the
                        transaction .................................................................................. 9

                2.      The merger clause does not apply to post-agreement conduct ................ 10

        D.      Mayne cannot avoid the implied covenant by hiding behind
                Amendment 2 .................................................................................... 11

        E.      The FAC properly pleads fraudulent inducement based upon specific
                statements of present fact and representations about the future ........................ 12

                1.      Statements of present fact are not "projections" ....................................... 12

                2.      Defendant's particularity argument is misplaced ...................................... 14

        F.      Unjust enrichment is not duplicative of any breach of contract claims
                and is explicitly pleaded in the alternative ............................................. 15

V.      CONCLUSION ............................................................................................ 16

## <u>TABLE OF CITATIONS</u>

**Cases**

*Cantor Fitzgerald, L.P. v. Cantor, et al.*,
  1998 WL 842316 (Del. Ch. Nov. 10, 1998) ........................................................... 7

*Cavi v. Evolving Sys., Inc.*,
  2017 WL 658470 (D. Del. Feb. 17, 2017) ............................................................ 10

*Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*,
  2016 WL 5243950 (Del. Ch. Sept. 22, 2016) ....................................................... 12

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
  350 F. Supp. 2d 582 (D. Del. 2004) ....................................................................... 6

*Chordia v. Lee*,
  2024 WL 49850 (Del. Ch. Jan. 4, 2024) ............................................................... 12

*Garner v. Glob. Plasma Sols. Inc.*,
  590 F. Supp. 3d 738 (D. Del. 2022) ...................................................................... 13

*Great Lakes Chem. Corp. v. Pharmacia Corp.*,
  788 A.2d 544 (Del. Ch. 2001) ............................................................................... 13

*Jeter v. RevolutionWear, Inc.*,
  2016 WL 3947951 (Del. Ch. July 19, 2016) ........................................................ 12

*Manti Holdings, LLC v. Authentix Acquisition Co.*,
  261 A.3d 1199 (Del. 2021) ..................................................................................... 4

*Matoil Serv. & Transp. Co. v. Schneider*,
  129 F.2d 392 (3d Cir. 1942) .................................................................................... 9

*Narrowstep, Inc. v. Onstream Media Corp.*,
  2010 WL 5422405 (Del. Ch. Dec. 22, 2010) ....................................................... 16

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .................................................................................. 7, 9

*Nutt v. A.C. & S., Inc.*,
  466 A.2d 18 (Del. Super. Ct. 1983) ...................................................................... 14

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ............................................................................ 7, 11

*Phunware, Inc. v. Excelmind Grp.*,
  117 F. Supp. 3d 613 (D. Del. 2015) ........................................................................ 4

*REI Holdings, LLC v. LienClear - 0001, LLC*,
  2019 WL 3546881 (D. Del. Aug. 5, 2019) ........................................................... 16

*Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*,
  633 F. Supp. 386 (D. Del. 1986) ........................................................................... 14

*Scott v. Vantage Corp.*,
  2018 WL 5919743 (D. Del. Nov. 13, 2018) ........................................................... 6

*Uberether, Inc. v. Anitian, Inc.*,
   2023 WL 1471754 (D. Del. Feb. 2, 2023) ............................................................................ 15

*Wolfington v. Reconstructive Orthopaedic Associates II PC*,
   935 F.3d 187 (3d Cir. 2019) ................................................................................................... 5

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Defendant Mayne Pharma, LLC's ("Defendant" or "Mayne") has moved to dismiss the First Amended Complaint ("FAC"). (D.I. 16; D.I. 21; D.I. 22) For at least the reasons stated herein, Plaintiff TherapeuticsMD, Inc. ("Plaintiff" or "TXMD") opposes the motion.

## II.    SUMMARY OF ARGUMENT

1.    Defendant's purported compliance with § 5.3(b) does not excuse its breach of § 5.3(h), which requires quarterly updated Closing Statements comparing actual invoices to accruals. The FAC alleges that Mayne failed to provide these statements in the required format and timeframe. Mayne's disputed interpretation of contract "on a quarterly basis" is not grounds for dismissal.

2.    Mayne's conduct violated the parties' reasonable expectations and breached the covenant of good faith and fair dealing. This claim is supported by specific allegations in the FAC. Mayne's reliance on general statements of Delaware law and inapposite case citations like *Nemec* does not justify dismissal, especially given the detailed factual context provided.

3.    Mayne's obligation not to transfer the NDC Labeler Code back to TXMD is implied by the nature of the transaction. The merger clause cited by Mayne does not apply to post-agreement conduct.

4.    With respect to TXMD's breach of the covenant claim as to the NDC Labeler Code, Amendment 2 does not retroactively cure the harm caused by Mayne's earlier actions. Mayne also tries to insert facts not pleaded into its arguments. The Court should decline to consider these materials.

5.    Mayne fraudulently induced TXMD to make payments to it based upon false statements of present fact, in 2023, regarding coupon and rebate allowances. These are not mere

projections. Additionally, contrary to Mayne's assertions, the FAC pleads fraud with sufficient particularity under Rule 9(b),

6.      TXMD's unjust enrichment claim is clearly pleaded in the alternative and does not duplicate the breach of contract claims. Mayne's argument mischaracterizes the FAC and relies on a case that is distinguishable on the facts.

## III.    ANSWERING COUNTERSTATEMENT OF FACTS

TXMD relies on facts as alleged in the FAC.

## IV.    ARGUMENT

Each of Mayne's arguments for dismissal fails as a matter of law and fact. Therefore, the motion should be denied.

### A.    Count I states a claim for breach of § 5.3(h)

#### 1.    Purported compliance with § 5.3(b) is not dispositive of breach of § 5.3(h), an altogether different subsection

Mayne's lead argument for dismissal of Count I of the FAC is that the claim is simply "quibbling over the formatting of the Closing Statements." (D.I. 22 at 7) In support of its position, Mayne cites language from § 5.3(b)[1] of the TA and disputes the facts as alleged. (*Id.* at 8) Not only is this not dispositive, but it is also irrelevant. The FAC clearly alleges that Mayne breached a different section of the TA—§ 5.3(h)—when it failed to provide "'updated Closing Statements' of Payer Rebates and Allowance for Wholesale Distributor Fees, in the format required, 'in each case, comparing actual invoices against accruals on a quarterly basis (using Purchaser's fiscal quarters)[.]'" (D.I. 16 at ¶ 59; *see also id.* at ¶ 60) The FAC alleges that Mayne is required to

---

[1] Section 5.3(b) pertains to the delivery of a closing statement "[w]ithin ninety (90) Calendar Days after the Closing Date[.]" (D.I. 16, Ex. A at § 5.3(b)) Mayne sent this statement to TXMD on March 26, 2023. (*Id.* at ¶¶ 17, 103) The FAC does not allege that Mayne breached this subsection.

comply with § 5.3(h) and pleads facts that Mayne did not comply with § 5.3(h). (*Id.* at ¶¶ 53–60) This alone is sufficient. The motion should be denied.

### 2.    A disputed construction of a contractual term is not a basis for dismissal

Mayne's second argument for dismissal of Count I is that the updated Closing Statements "in each case comparing actual invoices against accruals on a quarterly basis (using Purchaser's fiscal quarters)" (D.I. 16, Ex. B at § 5.3(h)) are not required to be provided to TXMD quarterly and instead the provision "only requires that Mayne organize the data contained in the updated Closing Statement by Mayne's fiscal quarters[,]" (D.I. 22 at 9 (citing TA at § 5.3(h))). In other words, Mayne disputes TXMD's construction of the term "on a quarterly basis" in § 5.3(h). This argument is without merit.

First, even if the only requirement of this subsection is for Mayne to organize the updated Closing Statement by fiscal quarters, the FAC alleges that Mayne breached § 5.3(h) by failing to provide the required information "in the format required, 'in each case, comparing actual invoices against accruals on a quarterly basis'" (D.I. 16 at ¶¶ 59–60)—*i.e.*, by fiscal quarters. Under Mayne's own construction, that the updated Closing Statement be organized by fiscal quarters, it has breached this subsection. On this basis, the motion should be denied.

Second, the plain language of the contract is clear that "on a quarterly basis" refers to reporting of specific quarterly information and provides a process for dispute resolution with respect to "such fiscal quarter," which is stated in the singular form:

> For a period of two years following the Closing Date in the case of Allowance for Returns and one year following the Closing date in the case of Wholesale Distributor Fees and Payer Rebates, Purchaser shall continue to provide updated Closing Statements solely with respect to calculation of the Closing Net Working Capital conduct solely with respect to the matters included in the items entitled Allowance for Returns, Allowance for Wholesale Distributor Fees and Payer Rebates, in each case, comparing actual invoices against

> accruals **on a quarterly basis** (using Purchaser's fiscal quarters). The amounts set forth in the updated Closing Statements **for such fiscal quarter** shall become final and binding on the parties on the date that is thirty (30) Calendar Days following Purchaser's delivery thereof to TXMD, unless TXMD delivers written Notice of Disagreement to Purchaser on or prior to such date.

(D.I. 16, Ex. B at § 5.3(h) (emphasis added)) The use of the singular "fiscal quarter," and not the plural "fiscal quarters," here makes it clear that the parties intended the updated Closing Statement provided "on a quarterly basis" to contain data for one specific "fiscal quarter." The language does not contemplate a single updated Closing Statement containing information related to multiple fiscal quarters. The FAC alleges that Mayne only provided two updated Closing Statements and that these statements did not comply with the requirements of § 5.3(h). (*Id.* at ¶¶ 53–60) Therefore, the FAC states a claim for relief. On this basis, the motion should be denied.

Additionally, Mayne's case law citation is misplaced. Neither of the cited cases support the proposition that a contract requiring updated closing statements "on a quarterly basis" only refers to the formatting of the statement and "does ***not*** require Mayne to provide Closing Statement every quarter[.]" (D.I. 22 at 9 (emphasis in original) (citations omitted)) Mayne's citation to page 1208 of *Manti Holdings, LLC* is to a rules section and does not reflect a holding of the court. *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021). In *Manti Holdings*, the court considered the question of whether the petitioners had waived their appraisal rights— there is no evidence that the court was considering quarterly reporting or interpretation of a similar contract term. *See generally, id.* Similarly, in *Phunware, Inc. v. Excelmind Group*, Judge Robinson did not consider a question of quarterly reporting and instead evaluated waiver under a term of the contract, ultimately concluding that the allegations "sufficiently establish[ed] plaintiffs' claim[.]" *Phunware, Inc. v. Excelmind Grp.*, 117 F. Supp. 3d 613, 627 (D. Del. 2015). Mayne's repeated citation to irrelevant case law is another reason to deny their motion.

### 3.    *Chemipal* does not support dismissal based upon damages

The FAC pleads damages associated with Count I. (D.I. 16 at ¶¶ 61–64) Mayne disputes these allegations, asserts its own defenses, and relies on facts outside of the pleadings, which is inappropriate on a motion to dismiss. Mayne makes two arguments, neither of which are supported by *Chemipal*, the only case law cited by Mayne.

First, Mayne relies on facts outside of the pleadings, which is strictly prohibited on a motion to dismiss. Mayne characterizes these facts as a straw-man argument, averring what Mayne contends (without citation) TXMD should be required to plead. (D.I. 22 at 10 ("TXMD's failure to plead that it exercised its audit right in the intervening six months is telling and fatal.")) Mayne does not identify a universe of case law in which a party must first audit the other party prior to claiming damages. Therefore, since this is not a legal principle, it is simply a fact outside the pleadings that should not be considered on a motion to dismiss. *See, e.g.*, *Wolfington v. Reconstructive Orthopaedic Associates II PC*, 935 F.3d 187, 197 (3d Cir. 2019) ("Because the District Court relied on matters outside the pleadings, it erred in entering judgment on the pleadings").

Second, Mayne's position is unsupported, contending that because "[t]here is no language in the [TA] that provides for TXMD's ability to prevent any returns to Mayne[,]" TXMD cannot allege harm proximately caused by Mayne's breach. (D.I. 22 at 10) This argument makes no sense. Mayne identifies no case law requiring that all damages arising out of a contract be specifically defined within that contract. On this basis, the motion should be denied.

Finally, *Chemipal* is the only case cited by Mayne in support of its contention that the claimed damages are "speculative," but that case is readily distinguishable, both procedurally and factually. In *Chemipal*, Judge Jordan granted a motion to preclude admission of the expert testimony underpinning the plaintiff's damages model. *Chemipal Ltd. v. Slim-Fast Nutritional*

*Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 595 (D. Del. 2004). Based upon this decision, Judge Jordan granted summary judgment, stating that "Chemipal's entire basis for asserting damages is Dr. Shuv–Ami's expert testimony, which, as discussed . . . [above]*, must be precluded for lack of reliability." *Id.* at 597. The court reasoned further "[b]ecause of the lack of record evidence presented by Chemipal, Chemipal's damages claims are speculative and therefore summary judgment for Slim–Fast is appropriate." *Id.* In this case, Mayne raises this dispute on a motion to dismiss, and not at summary judgment. There has been no fact or expert discovery. Also, in *Chemipal*, the failure of damages at summary judgment was a result of the exclusion of the only available evidence supporting the damages claim. Here, Mayne is asking for dismissal of the pleadings before fact discovery has even begun. Mayne's theory of the case is speculative at this point, and even Mayne's insertion of facts into the record is inappropriate. For these reasons, *Chemipal* is inapposite, and the motion should be denied.

> **B.    Conclusory citation to general principles of Delaware law is no basis to dismiss the implied covenant claim in Count II**

The FAC alleges a breach of the covenant of good faith and fair dealing (D.I. 16 at ¶¶ 65–76), with specific allegations describing the conduct that the parties would have proscribed, had they seen fit to negotiate the terms, (*id.* at ¶ 74). Mayne first contends that "TXMD does not allege where these obligations would be located within the Transaction Agreement, and that omission is fatal." (D.I. 22 at 12 (citations omitted)) This is wrong. Neither of the cited cases requires a plaintiff to identify a specific section where the term proscribing the conduct should be located. Instead, the requirement is simply that the plaintiff must "advance provisions of the agreement that support" a finding of the parties' reasonable expectations at the time of contracting. *Scott v. Vantage Corp.*, 2018 WL 5919743, at *6 (D. Del. Nov. 13, 2018). The FAC does that. (D.I. 16 at ¶¶ 73–74) Mayne discounts these allegations but forgets that, on a motion to dismiss, all factual

allegations are to be accepted as true and that the complaint is to be construed in the light most favorable to the Plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Viewing the FAC in the light most favorable to TXMD, the motion as to Count II should be denied.

Next, Mayne argues that there are a host of terms that should be in the TA to demonstrate the parties' reasonable expectations at the time of contracting—the absence of which factor against applying the covenant to the facts here. (D.I. 22 at 12–13 (citing *Cantor Fitzgerald, L.P. v. Cantor, et al.*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)). This is simply a re-statement of Mayne's first argument and is meritless for the same reason. The cited text from the *Cantor Fitzgerald* case is a general statement of legal principles and does not reflect a holding of the court. *Cantor Fitzgerald, L.P. v. Cantor, et al.*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). Mayne does not provide any analysis of the facts of that case or a discussion as applied to the facts of this case. Therefore, the citation lacks analysis, and the motion should be denied.

Third, Mayne argues that because the parties negotiated the TA and are sophisticated parties, the covenant of good faith and fair dealing is unavailable to TXMD. (D.I. 22 at 13–14) This argument includes a very long, conclusory string cite to the rules sections of numerous cases stating principles of Delaware law that Mayne contends apply here.[2] (*Id.*) However, Mayne only identifies a single case, *Nemec v. Shrader* as relevant to the facts of this case. (*Id.* at 14) *Nemec* concerned the exercise of redemption rights in a company stock plan. *Nemec v. Shrader*, 991 A.2d 1120, 1127–28 (Del. 2010). This case is misplaced. It relates to shareholder rights and not specifically rights under a commercial contract. *Id.* By contrast, this case concerns a commercial contract. Also, the *Nemec* court observed that "[t]he complaint alleges no facts that demonstrate

---

[2] Since Mayne does not bother to provide *any analysis* of these cases or their applicability to this case, TXMD declines to discuss these cases.

that, at the time of contracting, both parties would reasonably have expected Nemec and Wittkemper to participate in the buy out." *Id.* Here, for example, the FAC specifically alleges that the transaction included approximately 45 days of product inventory that was valued at approximately $18,346,381. (D.I. 16 at ¶¶ 39–41) The FAC also alleges that the parties negotiated line items in the Pre-Closing statement and had estimated returns to be approximately 5% of the TXMD Inventory, which the parties subsequently valued in December 2023 at $3,941,021. (*Id.* at ¶¶ 35–38) Based upon these facts, it is clear from the TA that the parties expected that the remaining TXMD inventory would be prescribed and sold in the first months of 2023 and that Mayne would process payer rebates and wholesale distributor fees over the next year with returns processed of the next two years. The FAC further alleges that "[t] he Parties anticipated some level of returns and negotiated an expected value of the returned goods as part of the net working capital, but not at a volume that appears to be all or substantially all of the TXMD Inventory in the commercial channel as of the close of the transaction and far exceeds the negotiated value. (*Id.* at ¶ 74)

Mayne attempts to cast these facts as an unreasonable attempt "two and a half years after contract execution—not to fill a gap but to draft entirely new obligations and provisions." (D.I. 22 at 13) But the FAC makes it clear that **two years after the Closing Date**, and more than a year after estimating returns to be $3,941,021, Mayne quintupled the dollar value of reported returns to a total of $20,841,862 and demanded a payment from TXMD of $16,900,841. (D.I. 16 at ¶ 51) This number exceeded the volume of TXMD Inventory in the supply chain as of the Closing Date. (*Id.* at ¶ 52) Mayne now argues that TXMD should have anticipated that Mayne would engage in bad faith conduct and would then hide information about the returns until the last minute. Mayne also argues that TXMD should have constructed contractual mechanisms to prevent Mayne from

8

engaging in this bad faith conduct. *Nemec* does not support this proposition—it stands for the requirement that a plaintiff plead facts supporting its breach of the covenant claim. *Nemec*, 991 A.2d at 1128. TXMD has done that. On this basis, the motion should be denied.

        **C.**      **The FAC alleges breach of contract as to the NDC Labeler Code**

           **1.**        **Mayne's obligation is implied in fact by the nature of the transaction**

Mayne creates a fictitious contract term as an attempt to wiggle out of responsibility, faulting the FAC for "not specifically alleg[ing] that the parties ever discussed or agreed that Mayne should not transfer the code back to TXMD." (D.I. 22 at 15) Mayne avers, without citation, that dismissal is appropriate, "because a party cannot breach an obligation that does not exist." (*Id.*) The FAC is clear. Transferring the NDC labeler code to Mayne was a necessary part of the transaction. TXMD and Mayne worked to facilitate this aspect of the transaction. Then Mayne inexplicably transferred the labeler code back to TXMD. Mayne now contends that it was *under no obligation to* not engage in this behavior and to transfer the code back to TXMD. (*Id.* at 14–15) That obligation is implied in fact from the nature of the transaction. *Matoil Serv. & Transp. Co. v. Schneider*, 129 F.2d 392, 395 (3d Cir. 1942) ("Contracts which are implied in fact embrace obligations arising out of mutual agreement and intent to promise which are tacit rather than expressed."). Here, the TA memorializes a licensing deal. The purpose of the licensing deal was to transfer several products approved by the FDA from TXMD to Mayne. Central to this was the ministerial function of transferring the FDA registration—the NDC Labeler Code—to Mayne, which was assuming the ongoing manufacture and sale of the licensed products registered to that code. The parties did not intend for Mayne to randomly reject aspects of the transaction, forcing TXMD to incur hundreds of thousands of dollars of expense for no reason. Mayne offers no explanation otherwise. The motion should be denied.

### 2. The merger clause does not apply to post-agreement conduct

Mayne contends that its post-agreement conduct is subsumed by a merger clause in the TA. (D.I. 22 at 15 (citing TA, § 13.3)) This is wrong, because the FAC alleges post-contract conduct. The *Cavi v. Evolving Systems, Inc.* case—which is the *only case* cited by Mayne with reference to Count III of the FAC—makes clear that in an integrated contract, there can be no breach when the alleged misconduct is "predicated on oral representations made prior to the execution of a contract." *Cavi v. Evolving Sys., Inc.*, 2017 WL 658470, at \*8–9 (D. Del. Feb. 17, 2017), *report and recommendation adopted in part,* 245 F. Supp. 3d 604 (D. Del. 2017). Here, the alleged misconduct occurred after the execution of the contract. The parties signed the TA on December 4, 2022. (D.I. 16 at ¶ 10) The FAC alleges conduct in December 2022, *after* the TA had been signed. (*Id.* at ¶¶ 78–87 (Count III)) Since the alleged conduct occurred after the TA was signed, the principle articulated in *Cavi* does not apply. The motion should be denied.

Additionally, Mayne attempts to bring the alleged conduct within the scope of what it avers is a merger clause in the Side Letter to Amendment 2 to the TA. This document addresses two specific subjects: (1) "Government Rebate Claims" and (2) "Government Pricing Matters." (D.I. 22, Ex. D, §§ I–II) The cited clause in § III(C) of the Side Letter is limited to the "subject matter hereof"—*i.e.*, Mayne's assumption (after the date of Amendment 2) of the administration of government rebate claims and government pricing matters addressed in the Side Letter. Therefore, this cited clause only applies to these subjects. Mayne does not argue that the FAC alleges conduct that falls solely within either of these two subjects. (D.I. 22 at 16) And neither of these two documents discusses TXMD's costs associated with administering and managing the NDC Labeler Code after the closing date and prior to Amendment 2. (D.I. 16 at ¶ 85) Therefore, the alleged conduct does not fall under the merger clause in the Side Letter, and the motion should be denied.

**D.     Mayne cannot avoid the implied covenant by hiding behind Amendment 2**

The silence of the TA with respect to transfer of the NDC Labeler Code left TXMD vulnerable to Mayne's opportunistic conduct. Therefore, the FAC alleges that the implied covenant is needed to fill an unfair gap. Mayne attempts to rewrite the FAC in its favor by adding in self-serving facts, contending that "the parties later agreed to amend the Transaction Agreement to expressly **handle all aspects** of the NDC Code transfer in Amendment No. 2 and the Side Letter, which were executed in March 2023" (D.I. 22 at 16–17 (emphasis added)), but this fails to account for the fact that Mayne's prior conduct in transferring the NDC Labeler Code back to TXMD undermined TXMD's negotiation position and forced a deal in Amendment No. 2 that from TXMD's perspective did not handle *all aspects* of the transfer of the NDC labeler code. These are the damages TXMD claims in the FAC. (D.I. 16 at ¶ 85) To credit Mayne's argument would require the Court to construe the FAC in a light most favorable to Mayne, which is specifically prohibited in a motion to dismiss. *Phillips*, 515 F.3d at 233 (specifying that all factual allegations are to be accepted as true and that the complaint is to be construed in the light most favorable to the Plaintiff).

Moreover, from TXMD's perspective, Mayne's transfer back of the NDC Labeler Code was unanticipated and prejudicial. Mayne transferred back the NDC Labeler Code on January 3, 2023. And now Mayne argues that between January 3 and March 16, 2023, "TXMD had every ability to negotiate and bargain for whatever terms it wanted[.]" (D.I. 22 at 17 (citing *Chordia v. Lee*)) Not so. At that time, TXMD was administering the NDC Labeler Code, making necessary filings, and paying "all invoices required under Government Healthcare Programs[.]" (D.I. 22, Ex. C at § 3) The unplanned nature of administering the NDC Labeler Code in this post-transaction, licensed environment, and the accompanying ongoing financial commitment shouldered solely by TXMD, made it difficult for TXMD to collect complete information about the cost of

11

administering the NDC Labeler Code and to, therefore, effectively negotiate and bargain at the time.

The cases cited by Mayne do not support dismissal of Count III. In *Chordia v. Lee*, an unreported case, the Court of Chancery declined to apply the implied covenant, because the parties had specifically discussed the concept during negotiations and had decided not to include it in the agreement. *Chordia v. Lee*, 2024 WL 49850, at *35 (Del. Ch. Jan. 4, 2024) ("This Court is 'most chary' about implying terms in an agreement, and doubly-so when the concept was raised and discarded in the course of negotiations."). This case is inapplicable here, because there is no evidence that the parties had discussed, and then agreed to reject, a contract term prohibiting Mayne from transferring the NDC Labeler Code back to TXMD.

Similarly, Mayne's citation to *Jeter v. RevolutionWear* (D.I. 22 at 17) is misplaced. In that case, the court upheld at least one breach of the covenant claim and did not dismiss any breach of the covenant claim for "frustrating" the parties' intentions. *Jeter v. RevolutionWear, Inc.*, 2016 WL 3947951, at *7–8 (Del. Ch. July 19, 2016). In view of Mayne's conclusory citation to this case, TXMD declines to speculate further. Finally, *Flores v. Strauss Water Ltd.*, does not apply. In that case, the breach of the covenant claim sought to "inject provisions" that would require a party to modify an agreement in the case of a default. *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *12 (Del. Ch. Sept. 22, 2016). The FAC does not allege any conduct or duty remotely comparable to the facts of that case. The motion should be denied.

### E.   The FAC properly pleads fraudulent inducement based upon specific statements of present fact and representations about the future

### 1.   Statements of present fact are not "projections"

Mayne attempts to rewrite Count V, TXMD's fraudulent inducement claim, to be a simple "business prediction example" related to projections. (D.I. 22 at 18) Here, Mayne mischaracterizes

TXMD's allegations. The FAC alleges that **in December 2023**, "Mayne represented to TXMD that the Allowance for Coupons and Allowance for Payer Rebates line items **through 2023 had already been and**, in 2024, were expected to be higher than either Party expected." (D.I. 16 at ¶ 109 (emphasis added)) This is a false representation of present fact (that coupons and rebates in 2023 were higher than predicted) and a statement about the future that induced TXMD to pay Mayne money. (*Id.* at ¶¶ 110-116) Mayne contends that this statement is a "business prediction" and "is inactionable as fraud." (D.I. 22 at 18 (citations omitted)) On the facts, this is not a projection, it is a statement of present fact, made in December 2023, that coupons and rebates had been higher than expected in 2023.

Mayne also misstates the law. It argues that projections cannot form the basis for a false representation of fact in a fraud claim. (D.I. 22 at 18 ("TXMD fails to allege a single actionable statement of fact made by Mayne")) But this is wrong on the cited case law. For example, in *Great Lakes Chemical*, the court found that an allegedly incorrect forecast corrected by the defendant two days later **negated the reliance element** of the fraud claim. *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001) ("Those revised projections negated the force of, and any justification Great Lakes might otherwise have had for relying upon, the alleged misrepresentation."). Here, Mayne contends the alleged misrepresentation cannot be a false representation of fact because it is a forecast. If true (it is not) this fact could negate the "false representation of fact" prong of the fraud claim. But *Great Lakes* contained no such holding, and thus the case does not apply. Further, to the extent that Mayne cites *Garner v. Global Plasma Solutions, Inc.* as exemplary, that case is also misplaced. The *Garner* court applied Maryland law and upheld the fraud claims, but there was no dispute over a projection or an estimate. *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 743–747 (D. Del. 2022). It is unclear why Mayne

cites this case or how it pertains to the facts alleged in the FAC. On these bases, Mayne's motion should be denied.

### 2.    Defendant's particularity argument is misplaced

The FAC alleges fraudulent inducement with particularity. (D.I. 16 at ¶¶ 102–116) Mayne's ignores the direct factual allegations in the FAC and contends that the claim is vaguely made upon information and belief and therefore "[t]his is insufficient as a matter of law." (D.I. 22 at 19 (citing to "*Id.*")). However, Mayne never explains what it specifically means by "this" or why it is "insufficient." For example, the cited "*Id.*" references a string cite to two cases, neither of which discusses the cited principle. First, *Nutt v. A.C. & S, Inc.*, an asbestos case, is irrelevant, because it is unclear whether any of the allegations were pleaded upon information and belief or if the court dismissed any claims on that basis. *See generally Nutt v. A.C. & S., Inc.*, 466 A.2d 18 (Del. Super. Ct. 1983). Second, to the extent that Mayne intended to also cite the *Satellite Financial* case, Mayne's brief does not discuss the facts of the case, and the court's opinion provides no insight into what was alleged "on information and belief" in ¶ 32 of the complaint in that matter or why it was insufficient. *Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 633 F. Supp. 386, 403 (D. Del. 1986) ("Most of plaintiffs' allegations that purport to constitute circumstances of fraud are alleged on information and belief, *see* Complaint ¶ 32[.]"). That an unknown claim in another case was inadequately pleaded is no basis to dismiss a claim in this case.

Regardless, Mayne's argument here is wrong. The FAC alleges the precise facts that Mayne avers are not present. (*Compare* D.I. 16 at ¶¶ 109-110 (emphasis added) ("Mayne represented to TXMD that throughout 2023 both Coupons and Payer Rebates were being used at a higher rate than expected by the Parties, indicating that TXMD Inventory was selling through the supply chain as anticipated under Transaction Agreement. . . **These statements were false**[.]"), *with* D.I. 22 at 19 (emphasis added) ("In fact, **TXMD never specifically alleges that Mayne's**

**representation was false**, *i.e.*, that Allowances for Coupons and Payer Rebates were not higher than the parties' prior expectations.")). It is clear from Mayne's opening brief that it is on notice of the claim. And to the extent that any portion of the FAC related to Count V is pleaded upon information and belief, the FAC sets forth specific facts on which that belief is based. *Uberether, Inc. v. Anitian, Inc.*, 2023 WL 1471754, at *7 (D. Del. Feb. 2, 2023), *report and recommendation adopted*, 2023 WL 2072425 (D. Del. Feb. 17, 2023) ("Plaintiff's allegations in the FAC are sufficient to satisfy the Rule 9(b) pleading standard for allegations based 'upon information and belief' because the FAC sets forth specific facts upon which the belief is reasonably based."). On this basis, the motion should be denied.

### F. Unjust enrichment is not duplicative of any breach of contract claims and is explicitly pleaded in the alternative

Mayne misrepresents the allegations in the FAC to state a breach of contract claim that the FAC simply does not make. It then argues that this unpleaded breach of contract claim precludes Count VI, TXMD's unjust enrichment claim. (D.I. 22 at 19–20 ("TXMD's alternative unjust enrichment claim is premised on the recycled allegation that Mayne oversold demand for the TXMD Products causing increased returns of TXMD Inventory which, pursuant to the Transaction Agreement, resulted in improper disbursements for coupons, rebates, and wholesale distributor fee allowances.")) This is wrong for two reasons.

First, neither Count I nor Count III of the FAC alleges that Mayne's overselling of demand constitutes breach of contract. In fact, both parties agree that no express term of the TA proscribes this conduct. (D.I. 16 at ¶¶ 65–76 (TXMD alleging in the alternative in Count II, "to the extent the Court determines that Mayne has not breached any term of the Transaction Agreement," that the overselling of demand constitutes breach of the covenant); D.I. 22 at 12–13 (Mayne arguing that "[t]here is nothing in the text of the" TA relating to overselling market demand or Mayne's

acceptance of returns)) Mayne glosses over this fact and instead summarizes TXMD's allegations as if they were "recycled" breach of contract claims (which they are not). (D.I. 22 at 19–20). The FAC alleges two breaches of contract: Count I, breach of § 5.3(h) of the TA (D.I. 16 at ¶¶ 53–64) and Count III, breach of contract associated with the NDC labeler code (*id.* at ¶¶ 77–87). Neither of these allegations of breach of contract are based on Mayne's overselling demand.

Second, Count VI is pleaded clearly in the alternative and does not reallege either of the breach of contract claims. (D.I. 16 at ¶¶ 117–118); *e.g. Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *16–17 (Del. Ch. Dec. 22, 2010) (finding unjust enrichment claim adequately pleaded and rejecting motion to dismiss); *contra REI Holdings, LLC v. LienClear - 0001, LLC*, 2019 WL 3546881, at *10 (D. Del. Aug. 5, 2019) ("The Amended Complaint however, does not set out the unjust enrichment claim as an alternative pleading. To the contrary, it alleges that 'REI hereby re-alleges the preceding paragraphs of this Complaint as if set forth in full herein.'"). In the *REI Holdings* case, which is the only case Mayne cites in support of its argument (D.I. 22 at 20), Judge Noreika clearly stated that realleging breach of contract claims in an unjust enrichment claim undermined the alternative pleading. *REI Holdings*, 2019 WL 3546881, at *10 ("By re-alleging each and all of the preceding paragraphs, Plaintiff brings the counts for breach of contract and unjust enrichment together and does plead them in the alternative. This Court finds that such a pleading in the alternative should be explicit."). Unlike the claims in *REI Holdings*, the FAC alleges the unjust enrichment claim in the alternative and does not reallege any breach of contract claims as part of those claims. On these bases, Mayne's motion should be dismissed.

V.    **CONCLUSION**

    For the reasons stated above, because each of Defendant's arguments fails as a matter of law and fact, the motion should be denied.

Dated: August 29, 2025

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Julie M. O'Dell (No. 6191)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
jmo@skjlaw.com
dat@skjlaw.com

*Attorneys for Plaintiff TherapeuticsMD, Inc*