IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THERAPEUTICSMD, INC., | |
| *Plaintiff*, | |
| v. | C.A. No. 1:25-cv-00440-RGA |
| MAYNE PHARMA LLC, | |
| *Defendant*. | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT MAYNE PHARMA LLC'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT**

<div style="float:right">

**MORRIS, NICHOLS, ARSHT &
TUNNELL LLP**
S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Phone: (302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

*Counsel for Defendant Mayne Pharma LLC*

</div>

OF COUNSEL:

**ARNOLD & PORTER KAYE
SCHOLER LLP**
Aaron F. Miner (admitted *pro hac vice*)
Matthew F. Medina (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Phone: 212.836.8000
Fax: 212.836.8689
aaron.miner@arnoldporter.com
matthew.medina@arnoldporter.com

September 5, 2025

## TABLE OF CONTENTS

**Page**

I.    ARGUMENT ............................................................................................................. 1

    A.    PLAINTIFF'S CLAIM FOR BREACH OF SECTION 5.3(H) FAILS ....................................... 1

    B.    PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS ........................................................ 3

    C.    PLAINTIFF'S BREACH OF CONTRACT CLAIM REGARDING THE NDC CODE
       TRANSFER FAILS ....................................................................................................... 5

       1.    Contract Implied in Fact ................................................................................. 5

       2.    Merger Clause ................................................................................................. 6

    D.    PLAINTIFF'S IMPLIED COVENANT CLAIM REGARDING THE NDC CODE TRANSFER
       FAILS ........................................................................................................................ 7

    E.    PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM FAILS ............................................ 8

    F.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS ..................................................... 9

II.    CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*AT&T Corp. v. Lillis*,
   953 A.2d 241 (Del. 2008) ..................................................................................1

*Braga Inv. & Advisory, LLC v. Yenni Income Opportunities Fund I, L.P.*,
   2020 WL 3042236 (Del. Ch. June 8, 2020).................................................2, 4

*Brinkmeier v. Graco Children's Prods. Inc.*,
   767 F. Supp. 2d 488 (D. Del. 2011)...............................................................9

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006)...........................................................................2

*Cavi v. Evolving Sys., Inc.*,
   2017 WL 658470 (D. Del. Feb. 17, 2017)......................................................7

*Clouser v. Marie*,
   2022 WL 453551 (Del. Super. Ct. Feb. 14, 2022)........................................5

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988)...........................................................................5

*Dunlap v. State Farm Fire & Cas. Co.*,
   878 A.2d 434 (Del. 2005) ...............................................................................4

*ESG Cap. P'rs II, LP v. Passport Special Opportunities Master Fund, LP*,
   2015 WL 9060982 (Del. Ch. Dec. 16, 2015)..................................................3

*Great Lakes Chem. Corp. v. Pharmacia Corp.*,
   788 A.2d 544 (Del. Ch. 2001).........................................................................8

*Intermec IP Corp. v. TransCore, LP*,
   2021 WL 3620435 (Del. Super. Ct. Aug. 16, 2021)......................................10

*JanCo FS 2, LLC v. ISS Facility Servs., Inc.*,
   2024 WL 4002825 (Del. Super. Ct. Aug. 30, 2024)......................................9

*Matoil Serv. & Transp. Co. v. Schneider*,
   129 F.2d 392 (3d Cir. 1942)........................................................................5, 6

*Mrs. Fields Brand, Inc. v. Interbake Foods LLC*,
   2017 WL 2729860 (Del. Ch. June 26, 2017).................................................4

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ..................................................................................... 3

*Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,
    202 A.3d 482 (Del. 2019) ............................................................................... 3, 4, 7

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
    117 F. Supp. 3d 613 (D. Del. 2015) ..................................................................... 2

*Reklam v. Bellator Sport Worldwide LLC*,
    2017 WL 5172397 (D. Del. Nov. 8, 2017) .......................................................... 8

*Scott v. Vantage Corp.*,
    2018 WL 5919743 (D. Del. Nov. 13, 2018) ........................................................ 4

*Trenwick Am. Litig. Tr. v. Ernst & Young*,
    906 A.2d 168 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007) ......................... 8

*Uberether, Inc. v. Anitian, Inc.*,
    2023 WL 1471754 (D. Del. Feb. 2, 2023) ........................................................... 9

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) ...................................................................................... 6

## **Other Authorities**

Rule 9(b) .................................................................................................................... 8, 9

Defendant Mayne Pharma LLC ("Mayne"), by and through its undersigned counsel, respectfully submits this Reply Brief in support of its Motion to Dismiss for Failure to State a Claim (D.I. 21) (the "Motion"), which seeks dismissal with prejudice of the First Amended Complaint (D.I. 16) (the "FAC") filed by Plaintiff TherapeuticsMD, Inc. ("Plaintiff" or "TXMD").

## I.    ARGUMENT

### A.    PLAINTIFF'S CLAIM FOR BREACH OF SECTION 5.3(H) FAILS

Delaware courts have consistently held that mere disagreement between parties over the meaning of a term is insufficient to establish ambiguity. *See, e.g., AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008) ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction....Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty."). TXMD's tortured construction of the contractual text does not save its claim. TXMD contends that "[t]he use of the singular 'fiscal quarter,' and not the plural 'fiscal quarters,' here makes it clear that the parties intended the updated Closing Statement provided 'on a quarterly basis' to contain data for one specific 'fiscal quarter.'" AB at 4. Under Delaware law, "[t]he true test is not what [TXMD contends] the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *AT&T Corp.*, 953 A.2d at 252-53. By its plain and unambiguous terms, Section 5.3(h)[1] does not require that Mayne provide quarterly Closing Statements. It is clear that "quarterly" refers to how Mayne is to calculate certain allowances affecting Closing Net Working Capital, not a standalone requirement that Mayne provide quarterly statements. § 5.3(h) ("Purchaser shall continue to provide updated Closing Statements solely with respect to calculation

---

[1] In its Answering Brief (D.I. 24) ("AB"), TXMD incorrectly contends that Mayne has confused the subsection of the Transaction Agreement underlying Count I. Overlooked by TXMD, Section 5.3(h) imports the requirements of Section 5.3(b) because "Closing Statement" is defined therein. *See* Ex. A, §§ 5.3(b), (h).

of the Closing Net Working Capital conduct solely with respect to the matters included in the items entitled Allowance for Returns, Allowance for Wholesale Distributor Fees and Payer Rebates, in each case, comparing actual invoices against accruals on a quarterly basis (using Purchaser's fiscal quarters)."). Since TXMD's allegations of breach contradict the plain and unambiguous terms of the Transaction Agreement, its claim fails and should be dismissed. *See, e.g.*, *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (a court may "grant a motion to dismiss when unambiguous language of a contract contradicts plaintiffs' allegations").[2]

As for the alleged damages, TXMD contends that Mayne "relies on facts outside of the pleadings" and that it lacks support for the contention that TXMD's damages are speculative. AB at 5. First, Mayne's citation to a provision in a contract attached to, and expressly relied upon in, the FAC is not relying on facts outside of the pleadings. *See, e.g.*, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations and citation omitted) (holding that in evaluating a 12(b)(6) motion to dismiss, a court "may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim"). TXMD fails to support its argument that pointing out a pleading omission results in relying on facts outside the pleadings. Second, to satisfy the damages element, a plaintiff must show "that the damages flowed from the defendant's violation of the contract." *Braga Inv. & Advisory, LLC v. Yenni Income Opportunities Fund I, L.P.*, 2020 WL 3042236, at *12 (Del. Ch. June 8, 2020). Here, TXMD has pled that as a result of the alleged breach, TXMD "was unable to identify, to prevent, or to mitigate any harms associated with the implementation of the Transaction Agreement or the

---

[2] TXMD's attempt to distinguish Mayne's cited authorities falls flat. The fact that neither *Manti Holdings* or *Phunware, Inc.* interpret "on a quarterly basis" in the context of an asset purchase agreement and as used in the Transaction Agreement is beside the point. That is not the proposition for which those cases are cited, as is clear from Mayne's Opening Brief (D.I. 22) ("OB"). *See* OB at 9.

Licensing Agreement," such as by "taking action to stop the flow of returns from distributors or by preventing Mayne from accepting such returns in the future." FAC ¶ 62. But TXMD did not have the contractual right under the Transaction Agreement to stop the flow of returns from distributors or to prevent Mayne from accepting returns. Accordingly, TXMD has not (and cannot) plead that it sustained a loss that causally flows from Mayne's alleged breach. *See, e.g., ESG Cap. P'rs II, LP v. Passport Special Opportunities Master Fund, LP*, 2015 WL 9060982, at *3 (Del. Ch. Dec. 16, 2015) ("To state a claim for breach of contract, a plaintiff must allege the existence of a contract, breach, and causally related damages."). Since TXMD has failed to adequately allege either breach or causal damages, two required elements of its claim, Count I should be dismissed.

## B.    PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS

Through Count II, TXMD seeks to avail itself of the implied covenant of good faith and fair dealing—"a limited and extraordinary legal remedy." *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019). Specifically, TXMD asks this Court not to fill a contractual gap but to draft entirely new obligations and provisions that are not apparent from the text of the Transaction Agreement. Unfortunately, TXMD's brief does not meaningfully engage with Mayne's caselaw.[3] AB at 7 ("TXMD declines to discuss these cases."). What TXMD summarily dismisses as "general principles of Delaware law", AB at 6, are instead pleading requirements that TXMD has failed to satisfy and applicable circumstances in which the implied covenant is unavailable.

---

[3] TXMD does not bother responding to Mayne's authorities because they are cited in string cite form. AB at 7. The only case TXMD chooses to address is *Nemec v. Shrader*, 991 A.2d 1120, 1127–28 (Del. 2010). TXMD contends that the case is inapposite because *Nemec* dealt with a Stock Plan and not a commercial contract but does not explain why that undermines the applicability of the court's analysis to this case.

First, TXMD has failed to allege a specific implied contractual obligation. TXMD does not point to specific contractual text that implies the obligations it belatedly seeks to add through the covenant. *See, e.g.*, *Cantor Fitzgerald, L.P.*, 1998 WL 842316, at *1 (implied covenant only applies "where obligations which can be understood from the text of the written agreement have nevertheless been omitted from the agreement in the literal sense"). Instead, TXMD contends, without support, that its invocation of the "structure of the Transaction Agreement" somehow suffices. AB at 6. That is contrary to Delaware law. *Scott v. Vantage Corp.*, 2018 WL 5919743, at *6 (D. Del. Nov. 13, 2018) ("[T]he plaintiff must advance provisions of the agreement that support this finding in order to allege sufficiently a specific implied contractual obligation."); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) ("Existing contract terms control…such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty…unattached to the underlying legal document."). TXMD has not pled a specific implied contractual obligation but instead seeks to add free-floating obligations that are not apparent from the text of the Transaction Agreement.

Second, TXMD's own allegations foreclose the Court's ability to imply terms using the covenant. TXMD's complaint alleges that the parties anticipated—indeed *estimated*—product returns, and that this "estimate" took into account product expiration and oversupply of inventory. FAC ¶ 35 ("The Allowance for Returns line item in the Pre-Closing Statement was an estimate of anticipated returns of TXMD Products based upon several factors, including expiration of the pharmaceutical product and oversupply of inventory."). Critically, the implied covenant applies "only to developments that could not be anticipated, not developments that the parties simply failed to consider.'" *Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, 2017 WL 2729860, at *40 (Del. Ch. June 26, 2017); *Oxbow Carbon & Minerals Holdings, Inc.*, 202 A.3d at 507-08 (implied

- 4 -

covenant is "not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract").

In sum, the implied covenant is unavailable and Count II should be dismissed because TXMD: (1) does not plead a specific implied contractual obligation but instead asks the Court to rewrite the agreement to its economic advantage years later; and (2) admits that variance of product returns based upon product expiration and overselling demand was anticipated by the parties.

### C.    PLAINTIFF'S BREACH OF CONTRACT CLAIM REGARDING THE NDC CODE TRANSFER FAILS

#### 1.    Contract Implied in Fact

In its brief, TXMD argues that the obligation allegedly breached (i.e., not to transfer the NDC Code to TXMD) "is implied in fact from the nature of the transaction." AB at 9. "An express contract is arrived at by language and an implied-in-fact contract by the actions of the parties." *Clouser v. Marie,* 2022 WL 453551, at *3 (Del. Super. Ct. Feb. 14, 2022).

In the FAC, TXMD located the contract for Count III in the parties' December 2022 "discussions," not in the actions or conduct of the parties. FAC ¶ 80 ("During the aforementioned discussions, the Parties agreed that TXMD would transfer TXMD's NDC Labeler Code to Mayne as of the Closing Date."); ¶ 81 ("This agreement constituted a valid contract between the Parties."). TXMD cannot amend its pleading through its brief. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

TXMD's sole legal authority is plainly inapposite. In *Matoil Serv. & Transp. Co. v. Schneider*, 129 F.2d 392 (3d Cir. 1942), "[t]he plaintiff, as the owner of a tank barge, sued the defendant in the District Court for the District of New Jersey to recover the reasonable value of the use made by the defendant of the barge for storage purposes while it was in the defendant's

hands as United States Marshal under a writ of seizure issued out of the District Court for New Jersey." *Id*. The question on appeal was "whether the owner of property which is in custodia legis is entitled to compensation from the legal custodian of the property for the latter's permissive continuance of a use of the property for the benefit of others which was being made of the property at the time of the seizure." *Id*. Nowhere in the decision does the court indicate that it was applying Delaware law. *Matoil* has no resemblance, and has no application, to this case.

To survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must allege that the defendant breached an obligation imposed by contract. *See, e.g.*, *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). TXMD's failure to plead breach of a pre-existing contractual obligation *in the FAC* requires dismissal of Count III. *Id*.

2.    Merger Clause

In its opening brief, Mayne explained that even if TXMD were to seek to remedy this dispositive pleading failure (i.e., by pleading that Mayne agreed to refrain from transferring the code), such an amendment would be futile based upon the merger clause. OB at 15. In response, TXMD makes two failed arguments focused on the timing and scope of the merger clause.

First, as for timing, TXMD argues that the merger clause does not apply to post-agreement conduct. This is based on a false premise: TXMD is using the signing of the Transaction Agreement on December 4, 2022, as the relevant date for the purposes of its merger analysis. AB at 10. But the Transaction Agreement executed on that date does not contain any mention whatsoever of the NDC Code or its transfer. *See* Ex. A. The relevant date is instead the execution of Amendment No. 2 and the Side Letter, in March 2023, which comprehensively govern the transfer of the NDC Code. Because Mayne's alleged breach occurred two months ***prior to*** execution of Amendment No. 2 and the Side Letter, the merger agreement applies and TXMD's

- 6 -

claim fails as a matter of law. *Cavi v. Evolving Sys., Inc.*, 2017 WL 658470, at *8–9 (D. Del. Feb. 17, 2017), *report and recommendation adopted in part,* 245 F. Supp. 3d 604 (D. Del. 2017).

Second, TXMD argues that the alleged conduct does not fit within the scope of the merger clause in the Side Letter, which it attempts to limit to two discrete topics: (1) "Government Rebate Claims" and (2) "Government Pricing Matters." AB at 10. But TXMD provides zero support for its apparent argument that a merger clause's scope is determined by its drafting headings. Amendment No. 2 and the Side Letter attached thereto are integrated and the alleged conduct (transferring the NDC Code) plainly falls within the scope of the merger clause's subject matter, which relates to the NDC Code transfer. *See* Ex. C (Amendment No. 2) ("[T]he Parties mutually desire to amend, modify and restate certain terms and conditions of the Agreement to transfer the TXMD Labeler Code to Mayne as of the Closing."); Ex. D (Side Letter) ("As soon as reasonably practicable after the Second Amendment Effective Date, TXMD shall use commercially reasonable efforts to cooperate with Mayne to facilitate the transition of the TXMD Labeler Code from TXMD's to Mayne's Medicare Coverage Gap Discount Program Agreement.").

### D. PLAINTIFF'S IMPLIED COVENANT CLAIM REGARDING THE NDC CODE TRANSFER FAILS

Setting aside what TXMD views as Mayne's "self-serving facts," AB at 11, it is instead TXMD's own allegations coupled with the plain text and chronology of the agreements which doom its implied covenant claim. The implied covenant is not available where, as here, a contract comprehensively governs the conduct at issue. *See, e.g., Oxbow Carbon & Minerals Holdings, Inc.*, 202 A.3d at 507 ("[T]he implied covenant 'does not apply when the contract addresses the conduct at issue,' but only 'when the contract is truly silent' concerning the matter at hand."). TXMD concedes that Amendment No. 2 and the Side Letter are not "truly silent" as to the NDC Code transfer but complains that it was unable to "effectively negotiate and bargain." AB at 12. In

other words, TXMD admits that it is asking this Court to draft a post-contracting amendment granting it "contractual protections that they failed to secure for themselves at the bargaining table." *Reklam v. Bellator Sport Worldwide LLC*, 2017 WL 5172397, at *5 (D. Del. Nov. 8, 2017), *report and recommendation adopted*, 2017 WL 5985562 (D. Del. Dec. 1, 2017) (citation omitted). Delaware courts regularly refuse to do so, and this Court should do the same and decline TXMD's request to rewrite the contract to its economic advantage years later. *Id.*

### E.    PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM FAILS

In its brief, TXMD concedes that part of the alleged misrepresentation is a forward-looking business projection (i.e., a statement about the future) but contends that the remainder is a statement of present fact. Not true. The entire allegation that TXMD points to in paragraph 109 is, by its plain language, a statement of expectation about future financial prospects and thus is not actionable as fraud absent particularized allegations that Mayne knew the statement to be false or lacked good faith, which TXMD does not allege. *Trenwick Am. Litig. Tr. v. Ernst & Young,* 906 A.2d 168, 209 (Del. Ch. 2006), *aff'd,* 931 A.2d 438 (Del. 2007); *Great Lakes Chem. Corp. v. Pharmacia Corp.,* 788 A.2d 544, 554 (Del. Ch. 2001). Just because the statement refers to 2023 **does not** make it a statement of present fact: the estimate Mayne referred to (i.e., line items for 2023) was never set in stone in December 2023 when Mayne allegedly made the statement. Based on the plain terms of the Transaction Agreement, line items for rebates, coupons, and returns were effectively estimates or projections of financial metrics subject to further adjustment and potentially to dispute resolution. *See* Ex. A. The agreed upon true-up process inherently acknowledges the possibility of adjustments to financial metrics based on subsequent developments or more accurate information.

As for particularity, TXMD contends that its fraud allegations made on information and belief are sufficient to pass Rule 9(b) muster because "the FAC sets forth specific facts on which

that belief is based." AB at 15. TXMD misstates when pleading fraud on information and belief is permissible under Rule 9(b). "Pleading based upon information and belief is permitted under Rule 9(b) when essential information lies uniquely within another party's control; however, the pleading must still set[ ] forth the specific facts upon which the belief is reasonably based." *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 496 (D. Del. 2011) (internal quotations omitted). Nowhere in the complaint does TXMD allege that essential information about overselling demand is uniquely within Mayne's control. TXMD has failed to plead contemporaneous ***facts*** that support its belief that fraud occurred in connection with the December 2023 settlement letter: it instead relies exclusively on inference, reasoning backwards—*i.e.,* impermissible fraud by hindsight—that because product returns eventually increased beyond the parties' initial estimates, Mayne must have been overselling market demand, and therefore must have lied when it allegedly stated that rebates and coupons for 2023 were higher than expected.

TXMD's sole citation for its particularity argument is plainly inapposite. In *Uberether, Inc. v. Anitian, Inc.*, 2023 WL 1471754, at *7 (D. Del. Feb. 2, 2023), *report and recommendation adopted*, 2023 WL 2072425 (D. Del. Feb. 17, 2023), the Court held that the complaint sufficiently alleged knowledge and intent to defraud based upon the allegation of admissions by Defendant's key personnel. Here, TXMD has included no such allegations of admission in its complaint and in fact does not even allege who made the alleged misrepresentation.

### F.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS

TXMD argues that "Count VI is pleaded clearly in the alternative and does not reallege either of the breach of contract claims." AB at 16. First, alternative pleading does not save TXMD's unjust enrichment claim. "Unjust enrichment and breach of contract can be pled in the alternative only when 'there is doubt surrounding [the relevant contract's] enforceability or ... existence'" or when "it is the [contract], itself, that is the unjust enrichment." *JanCo FS 2, LLC v.*

- 9 -

*ISS Facility Servs., Inc.*, 2024 WL 4002825, at *20 (Del. Super. Ct. Aug. 30, 2024). TXMD does not allege in the FAC or argue in its brief that either exception applies.

Second, even if Count IV does not reallege either of the breach of contract claims, "[TXMD] forgets its implied covenant theory." *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *18 (Del. Super. Ct. Aug. 16, 2021). "Notwithstanding the covenant's potentially misleading moniker ..., a claim for breach of the implied covenant is a contract claim, requires proof of breach-of-contract elements, and yields contract remedies." *Id*. "So '[i]f the alleged wrongs underlying [an] unjust enrichment claim relate[ ] solely to the same allegations as ... [a well-pleaded] implied covenant claim[ ],' the unjust enrichment claim will be dismissed." *Id.* (alterations in original). Here, TXMD's unjust enrichment claim arises from the same factual allegations as the implied covenant claim.[4] Indeed, TXMD's unjust enrichment claim at paragraph 117 expressly repeats and re-alleges the allegations made in support of its implied covenant claim. FAC ¶ 117 (realleging paragraphs 67-73). Since the factual allegations supporting TXMD's unjust enrichment claim are the same as those supporting its implied covenant claim, Count IV should be dismissed. *Intermec IP Corp.*, 2021 WL 3620435, at *18.

## II.    CONCLUSION

For these reasons, this Court should dismiss the FAC in its entirety and with prejudice.

---

[4] *Compare* FAC ¶ 119 (unjust enrichment) ("Mayne oversold demand for the TXMD Inventory and Mayne Licensed Products in the commercial channel, which led to premature returns of TXMD Inventory in the supply chain preferentially over Mayne's newer inventory and the aging of TXMD Inventory in the supply chain such that TXMD Inventory was returned."); *with* ¶ 68 (implied covenant) ("Mayne's oversupply of Mayne Licensed Products led to premature returns of TXMD Inventory in the supply chain preferentially over Mayne's newer inventory and the aging of TXMD Inventory in the supply chain such that TXMD Inventory was returned.").

**MORRIS, NICHOLS, ARSHT
& TUNNELL LLP**

OF COUNSEL:

/s/ *S. Mark Hurd*

**ARNOLD & PORTER KAYE
SCHOLER LLP**
Aaron F. Miner (admitted *pro hac vice*)
Matthew F. Medina (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Phone: 212.836.8000
aaron.miner@arnoldporter.com
matthew.medina@arnoldporter.com

S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Phone: (302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

*Counsel for Defendant Mayne Pharma LLC*

September 5, 2025

- 11 -