**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| THERAPEUTICSMD, INC. | |
| Plaintiff, | |
| v. | C.A. No. 25-440-RGA |
| MAYNE PHARMA LLC | |
| Defendant | |

**PLAINTIFF THERAPEUTICSMD'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S MEMORANDUM ORDER (D.I. 33)**

For the reasons below and pursuant to Federal Rule of Civil Procedure 72(a) and 28
U.S.C. § 636(b)(1)(A), TXMD respectfully objects to the Magistrate Judge's Memorandum
Order (the "Order") denying the motion to compel arbitration, granting the motion to compel an
expert determination, and granting the motion to stay.[1] (D.I. 33).

**I.      NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff TherapeuticsMD, Inc. ("TXMD") filed a Complaint in this action (the "First
Action") on April 8, 2025, alleging breach of contract, unjust enrichment, and fraudulent
inducement claims against Defendant Mayne Pharma, LLC ("Defendant" or "Mayne") arising
out of a December 2022 Transaction Agreement between the parties. (D.I. 1).

On May 30, 2025, Mayne moved to compel submission to an expert determination and to
stay the case or to compel arbitration (the "Motion to Compel"). (D.I. 8) The motion lacked the
required certification for nondispositive motions required under Local Rule 7.1.1. (*Id.*; D.I. 9).

Also on May 30, 2025, Mayne filed a Complaint (the "Second Action") against Plaintiff

---

[1] The undersigned certifies that these objections do not raise new legal/factual arguments. *See* the
Court's March 7, 2022 Standing Order for Objections Filed Under Fed. R. Civ. P. 72.

alleging breach of the same Transaction Agreement as alleged in this First Action. (C.A. No. 25-670-RGA, D.I. 1 and Ex. A). On July 28, 2025, TXMD moved to dismiss the Second Action (the "Second Action MTD"). (*Id.*, D.I. 11; D.I. 12).

On June 20, 2025, TXMD filed the First Amended Complaint ("FAC"). (D.I. 16). Mayne moved to dismiss (the "First Action MTD"). (D.I. 21; D.I. 22). On October 2, 2025, the Court referred the Motion to Compel, the First Action MTD, and the Second Action MTD to Magistrate Judge Tennyson. On March 23, 2026, the Magistrate Judge issued two Reports and Recommendation as to the First Action MTD and the Second Action MTD (D.I. 32; C.A. No. 25-670-RGA, D.I. 22), and a separate Memorandum Order (the "Order") granting the motion to compel an expert determination and the motion to stay (D.I. 33).

## II.      STANDARD OF REVIEW

In civil matters "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court" with exceptions for dispositive motions. 28 U.S.C. § 636(b)(1)(A). "A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a) (same). This court reviews a magistrate judge's order on a motion to stay for an abuse of discretion. *Applied Biokinetics LLC v. KT Health, LLC*, 2023 WL 6387679, at *2 (D. Del. Sept. 29, 2023).

## III.     SUMMARY OF OBJECTIONS

1.      The Magistrate Judge erred by selectively construing Section 5.3(c) without considering the contract as a whole, including the plain language of Sections 5.3(h) and 13.10. Moreover, the Order errs by reading Section 5.3(c) as taking priority over any competing or conflicting claims, such as those arising under Section 5.3(h), after the Magistrate Judge concluded that TXMD has stated a claim for breach of contract under Section 5.3(h).

2

2.      The Magistrate Judge erred by concluding, without engaging in any contractual interpretation under Delaware law, that TXMD's claims in the FAC fall solely within the scope of Section 5.3(c) and mandate an expert determination by the Firm.

3.      The court abused its discretion by ordering a stay of this First Action without fully construing the relevant terms in the Transaction Agreement and allowing the Second Action to proceed.

## IV.     STATEMENT OF FACTS

In December 2022, the Parties entered into transaction and license agreements transferring several pharmaceutical product lines from TXMD to Mayne. As part of this transaction, Mayne paid TXMD $140 million plus a closing net working capital amount based upon the valuation of the ongoing operations that were transferred. Given the complexities of distributing these products, the final values of the line items to the "Closing Net Working Capital" were to be determined in a series of true ups over a 2-year period following the closing date. The FAC alleges that as part of settling the initial true up in December 2023, and based upon Mayne's representations at the time, TXMD paid Mayne approximately $5.5 million. (D.I. 16 at ¶ 108). In a subsequent updated closing statement in January 2024, Mayne demanded additional money. (*Id.* at ¶ 49). And in February 2025, Mayne asserted that the total processed and unprocessed returns had ballooned from $3.9 million to $20.8 million and that – as a result – TXMD should pay Mayne an additional $16.9 million. (*Id.* at ¶ 51). This volume of returns appears to exceed Mayne's own January 2024 estimates of TXMD Inventory in the supply chain as of the closing date, which Mayne had valued at approximately $18.3 million and is greatly in excess of the 5% returns rate estimated and negotiated by the Parties as part of the working capital. (*Id.* at ¶ 52). At present, there remain three Closing Net Working Capital line items for the Parties to resolve: Allowance for Returns, Allowance for Payer Rebates, and Wholesale

Distributor Fees. (*Id.* at ¶¶ 24–38).

The FAC alleges claims for breach of contract associated with the Transaction Agreement ("TA") based upon Mayne's failure under Section 5.3(h) to provide "updated Closing Statements solely with respect to calculation of the Closing Net Working Capital conduct solely with respect to the matters included in the items entitled Allowance for Returns, Allowance for Wholesale Distributor Fees and Payer Rebates, in each case, comparing actual invoices against accruals on a quarterly basis (using Purchaser's fiscal quarters)." (D.I. 16 at ¶¶ 24–25). The FAC alleges that, absent these updated Closing Statements, TXMD has lacked sufficient information to perform under the contract, to negotiate aspects of Closing Net Working Capital, and to avoid or mitigate any potential damages. (*Id.* at ¶¶ 54–64). This First Action and the Second Action are in the pleading stage. With respect to the First Action MTD, the Magistrate Judge issued a Report and Recommendation (the "First Action R&R") granting-in-part and denying-in-part Mayne's motion to dismiss the FAC. (D.I. 32). In the First Action R&R, the Magistrate Judge *declined to construe* Section 5.3(h). (*Id.* at 9). The Magistrate Judge recommended upholding TXMD's claim for breach of Section 5.3(h), stating "T[X]MD adequately pleads that Mayne was contractually obligated to provide updated Closing Statements organized by quarter, that Mayne breached that obligation and that T[X]MD was harmed as a result." (*Id.* at 11).

## V.    ARGUMENT

The FAC alleges that the source of the true-up disputes between the parties arises under Section 5.3(h) of the TA and that Mayne failed to provide TXMD with adequate quarterly information about the Allowance for Returns, Allowance for Wholesale Distributor Fees and Payer Rebates. As a result, TXMD has argued that it lacks sufficient information—and that BDO would also lack sufficient information—to accurately resolve the true-up disputes.

When disputes arise under Section 5.3(h), the Section 5.3(c) approach **is optional** for the

parties: "[t]he matter **may be referred** by either party to the Firm in same manner as clause (c) above." (D.I. 16, Ex. B at ¶ 2 (emphasis added) (amended Section 5.3(h))). Here, a dispute arose, and TXMD opted not to refer the matter to the Firm under clause (c) and instead filed this suit.

However, having concluded that TXMD states a claim for breach of Section 5.3(h), the court now Orders the parties to engage in a discretionary, nonmandatory dispute resolution process, using the deficient and lacking information that is the subject of this lawsuit. The Order does not construe the relevant terms of the contract within its four corners, nor does the Order identify any language in the contract making Section 5.3(c) mandatory for disputes under Section 5.3(h). For these reasons, the Order is clearly erroneous and an abuse of discretion.

A.    **The Magistrate Judge erred by construing the Transaction Agreement to require the submission of all "true-up disputes" to the Firm for resolution**

In the Order, the Magistrate Judge concluded that "[a]lthough no claim asserted by T[X]MD must be submitted in its entirety for expert determination, . . . the Transaction Agreement requires submission to BDO of the one- and two-year trueup disputes that underlie T[X]MD's claims in this case." (D.I. 33 at 8). The Order's interpretation of Section 5.3(c) as the only avenue for true up disputes is contrary to Delaware law, because it fails to account for the plain language of the contract or to consider it as a whole.

1.    **The Magistrate Judge's construction of the TA is based solely on the language in Section 5.3(c) and is contrary to Delaware law**

The Magistrate Judge failed to follow the strictures of Delaware contract law and to consider the contract "as a whole," including the "in writing" option of Section 5.3(e), the language in Section 5.3(h) stating that disputes "**may be referred** by either party to the Firm in same manner as clause (c)," and the broader forum selection clause in Section 13.10. Delaware courts "interpreting a contract 'will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its

5

provisions.'" *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (quoting *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014)).

Within its four corners, the TA contains a forum selection clause in which either party may file a lawsuit in the District of Delaware raising "**[a]ny claim or dispute** arising out of or relating to this [Transaction] Agreement[.]" (D.I. 16, Ex. A at § ¶ 13.10 (emphasis added)). Mayne relied on this provision to establish personal jurisdiction over TXMD in the Second Action. (C.A. No. 25-670-RGA, D.I. 1 at ¶¶ 14–15).

Also, within the TA's four corners, Section 5.3(h) does not mandate resolution under clause (c). The referral to the Firm is optional: "[t]he matter **may be referred** by either party to the Firm in same manner as clause (c) above." (D.I. 16, Ex. B at ¶ 2 (emphasis added) (amended Section 5.3(h))). Therefore, TXMD argued in its answering brief on the Motion to Compel that in addition to the process outlined in Section 5.3(c), the parties could resolve the issue themselves in writing under Section 5.3(e) or that they could raise this issue, among others, through federal court litigation as permitted by Section 13.10. (D.I. 1 at 11). The Magistrate Judge rejected these arguments without construing the Transaction Agreement, instead pointing solely to the language of Section 5.3(c) and refusing to consider any of the other contractual provisions. (D.I. 33 at 7–9). The Order is clearly erroneous, because it fails to consider the "four corners" of the contract, including the plain language of Section 5.3(h). (D.I. 16, Ex. B at ¶ 2).

Moreover, the plain meaning of Section 5.3(c) is that it follows clause (b), which relates to the "Purchaser's calculation of the Net Working Capital as of the Closing" delivered within 90 calendar days after the closing date.[2] (*Id.*, Ex. A at § 5.3(b)). Clause (b) defines several terms,

---

[2] This aspect of the TA was resolved between the parties in December 2023. (D.I. 16 at ¶¶ 29, 102–116).

including "Closing Net Working Capital." (*Id.*). The Order does not discuss or analyze these defined terms and uses them imprecisely throughout the Order. (*E.g.*, D.I. 33 at 8–10, 12–13).

In addition, the Order does not consider the permissive language of Section 5.3(h) and simply rejects the forum selection clause of Section 13.10, stating "[t]he **disputed provision is not reasonably susceptible to the meaning T[X]MD ascribes (that submission to BDO is optional) – or any meaning other than the one Mayne offers**." (D.I. 33 at 9 (emphasis added) (citing TA § 5.3(c))). Here the Magistrate Judge's construction of the Transaction Agreement is erroneous—the court must construe these terms, including defined terms, within the four corners of the contract. It must do so independently of the parties and must not simply "agree" or "disagree" with one party or another as to the application of Section 5.3(c) in piecemeal fashion. For these reasons, the Magistrate Judge's construction of the Transaction Agreement is contrary to Delaware law, and the Court should not adopt it.

a.   **The Order does not explain its reasoning why the dispute raised in the FAC concerns "Closing Net Working Cpaital"**

In explanation, the Order broadly reasons that "[a]ccording to the clear terms of the Transaction Agreement," Section 5.3(c) applies "when disputes concerning the Closing Net Working Capital arise and remain unresolved (as is true here)." (D.I. 33 at 8). Here, the Court does not explain its reasoning. First, "Closing Net Working Capital" is a defined term in clause (b). The Order also does not discuss the term's definition, its scope, or its origin in the TA. Importantly, the Order does not provide any analysis or discussion of whether the disputes raised in the FAC are "disputes concerning the Closing Net Working Capital[.]" Second, the Order does not discuss Sections 5.3(h) or 13.10 and their relation to the disputes raised in the FAC. The Order's conclusory dismissal of arguments is insufficient.

7

**b.      The Order does not consider or construe the priority of claims**

The Order does not construe the TA in view of a situation where (as here) a party raises claims associated with breach of Section 5.3(h) and where that party—instead of invoking the optional dispute resolution protocol of Section 5.3(c)—files suit in this court pursuant to Section 13.10. Essentially, the Order reasons that under the Transaction Agreement, any dispute related to any aspect of Net Working Capital, including those relating to Section 5.3(h) and raised by a lawsuit in federal district court, must be presented to the Firm for resolution. (D.I. 33 at 7–9). However, the Order does not explain why this is so. TXMD has filed suit for breach of contract associated with Mayne's performance under Section 5.3(h), a claim the Magistrate Judge has concluded states a claim for relief (D.I. 32 at 11), and yet the Magistrate Judge does not explain why the court must preferentially apply Section 5.3(c), even though no facts in the record suggest that either party has invoked the provisions of "clause (c)" prior to TXMD's filing suit in this matter. This failure to consider the contract as a whole runs contrary to Delaware law.

**2.      The Magistrate Judge erred by reading new terms into the Transaction Agreement and effectively rewriting it**

To the extent that the Court considers that the Order adequately considered the permissive "may" language of Section 5.3(h) or that the Order's construction of Section 5.3(c) applies, the Order is in error, because it reads terms into the TA that are not there. Specifically, the TA is silent as to the priority of claims raised under Section 13.10 in relation to those raised under Section 5.3(c) or (h)—that is the order in which the Court is to construe, or to refer to an expert determination, claims arising under the various provisions of the Transaction Agreement.

The Order dismisses TXMD's rebuttal arguments as to the case law cited by Mayne in its opening brief (D.I. 18 at 16–17) arguing that these rebuttal arguments are—in fact—"cases cited by T[X]MD" (D.I. 33 at 9). The Magistrate Judge dismissed TXMD's arguments related to the

8

dispute resolution process in Section 5.3(c) that specifies that the Firm is not to perform an independent review and that its findings are not admissible in any proceeding, arguing without analysis or discussion of the relevant facts, that *ArchKey*, a case based upon a *different* contract "enforced a similar provision . . . 'based solely on the written presentation of Purchaser and Seller and not by independent review.'" (D.I. 33 at 9). As an exercise in contractual interpretation, these arguments are contrary to Delaware law. There is no ambiguity to the language of Section 5.3(h). The Magistrate Judge ignores the plain language of the Transaction Agreement and instead engages in straw-man arguments about case law instead of construing the contract at hand. This is clear error.

      **B.     The Magistrate Judge erred by concluding that TXMD's claims in the FAC fall "within the scope of Section 5.3"**

The Magistrate Judge furthers a nonsensical reading of the TA in which Section 5.3(h)'s permissive "may" language does not exist and section 13.10 does not exist and posits a scenario in which the Court interprets a contract where "an ADR provision contemplates a process other than arbitration." (D.I. 33 at 12 (citing *Terrell v. Kiromic Biopharma, Inc.*, 297 A.3d 610, 617 (Del. 2023)). Again, the Magistrate Judge's Order is based upon misreading the TA and concluding that the language in Section 5.3(c) discussing a "final determination of the Closing Net Working Capital in accordance with the terms of this Agreement" applies to disputes under Section 5.3(h) and not Section 5.3(b) as clause (c) is written. (*Id.*) In support, the Magistrate Judge accuses TXMD of "back[ing] out of its express agreement because it no longer views this term [Section 5.3(c)] favorably." (*Id.* at 13) The Order misses the point that Section 5.3(c) only applies to the process of dispute resolution under Section 5.3(h) *when a party invokes it*, and neither party invoked it prior to TXMD filing this suit. Therefore it is clear error for the Magistrate Judge to interpret the TA otherwise.

### C.    The Magistrate Judge Abused the Court's Discretion by Ordering A Stay

The order to stay this First Action while allowing the Second Action to proceed will prejudice TXMD and is an abuse of the court's discretion.[3] The Order preferentially interprets Section 5.3(c) in a vacuum without crediting TXMD's choice to file this litigation claiming that Mayne has breached Section 5.3(h) by failing to provide TXMD with adequate information necessary to negotiate and resolve any disputes related to the line item true-ups.

The Magistrate Judge concluded that the expert determination would simplify issues for trial. This is incorrect because the information that Mayne has provided to TXMD (and will present to the expert) is deficient and incomplete for at least the reasons alleged in the FAC. Moreover, any determination by the expert will be inadmissible at trial. As for the balance of the harms, the Magistrate Judge considered that "Mayne may be seeking a tactical advantage here" (D.I. 33 at 14) but did not consider the lack of a stay in the Second Action. The court concludes that "any prejudice to T[X]MD is minimal" while ordering an expert determination based upon the same faulty and incomplete information provided by Mayne. A stay of more than 6 months while continuing forward with the Second Action prejudices TXMD.

## VI.    CONCLUSION

For the reasons stated above, TXMD respectfully requests that the Court overturn the Order to Compel and the Order to Stay.

---

[3] In the Second Action, the Magistrate Judge, acting *sua sponte*, recommended consolidating of the First and Second Actions but did not recommend staying the Second Action pending the ordered expert determination in the First Action. (C.A. No. 25-670-RGA, D.I. 22 at 6–7 & n.3).

10

Dated: April 6, 2026

SMITH KATZENSTEIN & JENKINS LLP

*/s/ Daniel A. Taylor*
Julie M. O'Dell (No. 6191)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
jmo@skjlaw.com
dat@skjlaw.com

*Attorneys for Plaintiff TherapeuticsMD, Inc*

11